S. S. McCONNELL, Superintendent of Banks, etc. v. FAYETTE COUNTY BANK.

Western Section. November 16, 1928.

No petition for Certiorari was filed.

C. A. Stainback, of Somerville, for appellant.
John W. Farley, of Memphis, for appellee.

SENTER, J.  When the Fayette County Bank of Somerville, Tennessee, failed and the State Superintendent of Banks appointed the Receiver, J. W. Farley, the administrator of the estate of T.

J. Gibson, deceased, filed a petition in the cause, alleging in sub-
stance that prior to the time the bank failed and was placed in the
hands of the State Superintendent of Banks as receiver, the bank
issued a certificate of deposit, which certificate of deposit is as
follows:

"FAYETTE COUNTY BANK OF SOMERVILLE.
"No. 3278
"$2000
"Somerville, Tennessee,
"October 3, 1926.

"T. J. Gibson has deposited in this bank two thousand
dollars to the credit of himself or Mrs. Mattie Mitchell or order
of Mrs. Mattie Mitchell, payable only three months after date
to his order on return of this certificate properly endorsed.

"Interest at four per cent per annum.

"No interest after maturity.

"Not subject to check.

"E. A. Maddox, Cashier."

The petition of J. W. Farley, administrator, further averred that
said certificate of deposit was not endorsed by T. J. Gibson, and
that the records of the said Fayette County Bank show that the
sum of two thousand dollars ($2000) was on deposit in said bank
in the name of the said T. J. Gibson at the time of the failure of the
bank. The petition further avers that this deposit is the property
of the estate of T. J. Gibson, deceased, and that said administrator
is entitled to receive all dividends paid on the certificate of deposit
in the distribution of the assets of the bank by the receiver, and
prays that all dividends paid out in the liquidation of the bank be
paid to the petitioner on said certificate of deposit.

Mrs. Mattie Mitchell then filed a petition asking to be permitted
to intervene for the purpose of filing an answer to the petition of
John W. Farley, administrator of the estate of T. J. Gibson, de-
ceased, and to the end that she could defend her claim of right to
the deposit in question. In this petition Mrs. Mattie Mitchell
averred in substance that she was then in possession of the certifi-
cate of deposit, and that the present certificate was issued and de-
livered to her daughter, Mrs. Mary Lou Morrison, as her agent, by
T. J. Gibson with directions that the same be delivered to her and
placed in her box in the safety vault of the bank. The petition
further avers that prior to the issuance of this certificate by the
bank, T. J. Gibson had deposited $1600 in the bank and for which
he took a certificate of deposit payable in the same way and manner
as the present certificate here involved; that prior to his death
he sent additional moneys to her daughter, Mrs. Morrison, with
a letter directing her to take up the old certificate and take a

new certificate for the sum of $2000 and to have the new certificate for $2000 issued in accordance with the provisions of the first certificate, and further directed her to deposit the new certificate or to place the same in the box of Mrs. Mitchell at the bank, and that the new certificate for $2000 was issued and had been in her possession and in her box at the bank since its issuance. Mrs. Mitchell, by her petition and answer, claims ownership of this deposit, and that she is entitled to the same.

There was a stipulation filed by counsel representing the respective parties. By this stipulation it is agreed that in lieu of depositions and proof in support of the petition of Farley, the administrator, that it shall be considered as proved by the evidence; That T. J. Gibson died April 27, 1927, intestate, and a resident of Shelby county, Tennessee, and left neither widow nor children surviving him; that John W. Farley was appointed administrator of the estate of T. J. Gibson, deceased, by the Probate Court of Shelby county, Tennessee; that said Gibson was for several years prior to his death employed by the Memphis Street Railway Company as a conductor; that the certificate of deposit upon which the petition is based is as set out in the petition; that Mrs. Mattie Mitchell has possession of said certificate of deposit, the intervening petitioner, and agrees to present the said original certificate in court at the hearing; that the draft register of the Fayette County Bank shows that a certificate of deposit of $2000 was issued to T. J. Gibson and that all the records of the bank relating to said certificate of deposit as described in said petition of John W. Farley, administrator, shall be presented at the hearing, and that the liquidating agent of the bank, if requested or ordered so to do, attach to this stipulation a copy of said bank records. That said administrator had personally examined the records of the Union Planters Bank, of Memphis, Tennessee, over a period of several years prior to the date of the death of the said T. J. Gibson, and that said records showed that during that time Gibson had on deposit, at various times, sums ranging from one to five hundred dollars. The stipulation on behalf of Mrs. Mattie Mitchell states that the affidavits of Mrs. Mattie Mitchell, Mrs. Mary Lou Morrison and Blakeley Stainback, filed herein may be considered as proof on behalf of Mrs. Mattie Mitchell.

These three affidavits and the exhibits thereto were accordingly filed. The affidavit of Mrs. Mattie Mitchell states:

"T. J. Gibson was my brother-in-law and when he and his wife broke their hips I brought them out here and kept them from April to October, and he said I was the only one that had ever done anything for him and he wanted me to have what

he had. He said he wanted to put it in the bank here so that if anything happened to him nobody could get it but me, and if anything happened to me, nobody could get it but him. He made the first deposit himself, gave the Post Office Savings Stamps to Captain Maddox for collection and gave the certificate of deposit to Mary Lou to put in my box for me which she did and it has been in my possession ever since.

"The first certificate as well as I remember reads just like this one and when it became due it was taken down and renewed by my daughter."

The affidavit of Mrs. Mary Lou Morrison, daughter of Mrs. Mitchell, states as follows:

"Uncle Tom, Mr. T. J. Gibson, asked Captain Maddox to cash some Postal Savings Certificates. Captain Maddox told him he would be glad to, he asked how he could put it in and either of them draw it out. Captain Maddox told him to put it in to T. J. Gibson or Mrs. Mattie Mitchell. He put it in and gave me the certificate and told me to put it in my mother's bank box, which I did, and when it was due he sent me a letter and told me to renew it, and he sent that little card and a check of one hundred and some odd dollars on Mr. Gaines, a merchant at Memphis, which made it even $2000, and put it back just like it was, that is in the handwriting of T. J. Gibson, and I file it as Exhibit A to this affidavit. I went to the bank and Mr. Stainback gave me the box and he renewed it, he told me in the letter to renew it just like it was and give it to Mat, and Mama told me to put it in the box.

"He died at the Methodist Hospital in Memphis, in April, 1927, and was a resident of Memphis at that time, and was living in Memphis when the first certificate was issued, also when the renewal was issued."

Mr. Blakely Stainback in his affidavit, stated as follows:

"I am liquidating agent for H. L. Grigsby, Superintendent of Banks and Receiver of the Fayette County Bank, and was bookkeeper and teller for the Fayette County Bank for several years.

"Mrs. Mary Lou Morrison brought in a certificate for $1600 and put in some more cash and Captain Maddox had me to make the new certificate for $2000 payable to T. J. Gibson or Mrs. Mattie Mitchell or her order, the old certificate was taken up by me which we still have in the files of the Fayette County Bank. I file an exact copy of the same as exhibit to this affidavit, as I want to keep the original in the files of the bank.

"The Register of Certificates of Deposits only shows the name of T. J. Gibson as there is only a very small space there

to write names, we never settle by this anyway, we always settle by the certificate, the certificates are numbered, you couldn't write all of this in without getting into the next number.''

The copy of the original certificate made an exhibit to the affidavit of Mr. Stainback, differs somewhat in the language from that of the $2000 certificate. The original certificate for $1600 dated April 3, 1926, states as follows:

''T. J. Gibson has deposited in this bank sixteen hundred dollars to the credit of himself or Mrs. Mattie Mitchell, payable only three months after date to the order of either on the return of this certificate. properly endorsed.

''Interest at four per cent per annum.

''No interest after maturity.

''Not subject to check.''

This first certificate which was taken up by the bank upon the issuance of the new certificate for $2000 bears the endorsement on the back as follows: ''T. J. Gibson by Mary Lou.'' The two certificates, as will be observed, differ in the matter of the payment of the certificate. The original certificate for $1600 recites ''payable only three months after date to the order of either on return of this certificate properly endorsed,'' while the $2000 certificate, the one now in controversy, recites ''Payable only three months after date to his order on return of this certificate properly endorsed.'' The first certificate recites that it shall be payable to the order of either on the return of the certificate properly endorsed, while the second certificate provides that it is payable to his order on return of this certificate properly endorsed.

At the hearing of the cause on these petitions the Chancellor held, and so decreed, that this deposit belonged to the estate of T. J. Gibson, deceased, and that John W. Farley was entitled to receive all dividends paid by the bank on this certificate, and held that Mrs. Mitchell was not entitled to any part of the same.

Mrs. Mitchell has appealed from this decree of the Chancellor to this court, and has assigned as error the holding and decree of the Chancellor that this deposit belongs to the estate of T. J. Gibson, deceased, and in holding that she was not entitled to any part of the same.

We cannot agree to the contention of appellant that a gift inter vivos had been made by T. J. Gibson to Mrs. Mitchell of this deposit. In order to constitute a valid gift inter vivos, it must appear that the donor retains no interest or control of the subject of the gift, and severs all rights, and completes the gift by a delivery. If this certificate of deposit had been made to Mrs. Mitchell alone, and its possession delivered to her, either in person or through an-

other, with direction that it be deposited in her lock-box in the bank, it would have constituted a gift inter vivos and by delivery. (12 R. C. L., pp. 932-3, sec. 10; Sheegog v. Perkins, 4 Baxt., 273; Morris v. Morris, 9 Heisk., 814; Shugart v. Shugart, 111 Tenn., 179, 76 S. W. 821; Scott v. Trust Co., 123 Tenn., 258, 130 S. W., 757.

The essential elements constituting a gift inter vivos, are, first, the intention of the donor to make the gift, second, a delivery of the gift to the donee by the donor, and third, to complete the gift the donor must relinquish all rights of control of the thing given, and must vest in the donee the sole right to control. He cannot retain or reserve to himself any interest or right to the thing given or to its control. When this measure is applied to the present transaction we find that at the time he made the deposit, he expressed his wishes to the cashier of the bank, Mr. Maddox, and stated that he desired the deposit to be made so that either he or Mrs. Mitchell could draw it out. Mr. Maddox advised that the deposit should be made, and the certificate of the deposit issue in the name of T. J. Gibson, or Mrs. Mitchell, and the deposit was first made of $1600, and a certificate of deposit was issued for that sum, payable three months from date of issuance, and not subject to check and bearing interest at the rate of four per cent. The first deposit provided in the certificate that it was payable to either T. J. Gibson or Mrs. Mitchell when properly endorsed. When this deposit was renewed and a new certificate of deposit for $2000 was issued by the bank, while it stated the deposit was to the credit of T. J. Gibson or Mrs. Mitchell, or order of Mrs. Mitchell, it provided that it was payable only three months after date to his order on return of the certificate properly endorsed. While it is true that the bank was directed to issue the $2000 certificate with the same terms and provisions as the first certificate of $1600, he made the second certificate to read "payable only three months after date to his order on return of this certificate properly endorsed." We think this was an inadvertence upon the part of the bank in issuing the second certificate and that it was intended to be issued with the same provisions as to when and to whom and how it would be payable as contained in the first certificate of $1600. However, in either event T. J. Gibson did not relinquish control over the deposit and place it solely under the control of Mrs. Mitchell, for he had the same right, at least, over its control as did Mrs. Mitchell, and this was his intention as expressed at the time the deposit was first made, and also at the time the new certificate increasing the amount of the deposit was issued.

The learned Chancellor stated in the decree that the records of the bank showed that this deposit was made solely in the name of

T. J. Gibson. While it is true this entry on the bank books stated the deposit was made by T. J. Gibson, yet the bookkeeper of the bank stated in his affidavit filed as evidence under the stipulation of parties, that the certificate controlled and not the entry on the books, and he further explained that there was not sufficient space for writing the full statement of the deposit.

The view we have taken of the question presented with reference to this transaction, does not bring it within the rule of a gift, but rather does it present the respective rights of the parties to a negotiable instrument.

The relation between a depositor and the bank is that of debtor and creditor and not that of bailor and bailee. (Michie on Banks and Banking, Vol. 2, Sec. 119.)

Mr. Michie, in his valuable work on Banks and Banking, Vol. 2, Sec. 152 (9), states:

"A certificate of deposit has the attributes of a negotiable note, and the depositary is liable to deliver the deposit to any holder of the certificate to whom it is properly endorsed. . . ."

We cannot agree to the contention made by appellee, and as held by the Chancellor, that the entry on the books of the bank controls, or even affects the question of the true ownership of the deposit, and especially where the entry is explained. The certificate of deposit is the evidence of the debt. The relation of the bank to the depositor is that of debtor and creditor. The bank issued the certificate of deposit evidencing the debt just as a note would be issued as evidencing a loan. The certificate of deposit evidences the deposit, and it is this certificate issued by the bank to the depositor that controls.

Where it appears, as in the present case, that one of the persons named in the certificate alone makes the deposit, his statements made to the bank at the time the deposit is made may be looked to for the purpose of arriving at the intention of such depositor. In the present case the certificate of deposit was made out and issued in accordance with Mr. Gibson's direction. This certificate provides on its face that it is not subject to check during the three months term, and, hence, it is a three months term deposit. Neither of the parties named in the certificate could check on this deposit account. It was not a general checking deposit account where the depositor or depositors could check on the same. In all essential respects the certificate of deposit amount to a promissory note, bearing four per cent interest, and due and payable three months after date to T. J. Gibson or Mrs. Mattie Mitchell.

Referring back to the question of this transaction constituting a gift, and as we have already stated, we do not think the transaction

falls within the rule governing a gift. We are referred by appellee to the case of Atchley v. Rimmer, 148 Tenn., 303. In that case the claimant in possession of the note, claimed ownership thereof by reason of an alleged delivery of an unendorsed note payable to the alleged donor. That case was governed entirely by the rule applicable to gifts inter vivos. The holding of the court in that case was, that the mere possession of the note in question by the alleged donee, under the facts of that case, did not constitute a gift inter vivos. But, as hereinbefore set out, and for the reasons stated, we cannot hold that the present transaction constituted a gift inter vivos.

We are of the opinion that the certificate of deposit involved in this controversy should be treated as the promissory note of the bank, or rather, that it has the attributes of a promissory note, and should, therefore, be governed by the rules applicable to a promissory note.

In the case of Smith v. Haire, 133 Tenn., 349, the court was there dealing with two certificates of bank deposits issued by two respective banks, payable to the order of J. T. M. Haire, or Betty Humes Haire. In that case the court said:

"The first question that arises is upon the meaning to be given to the conjunction 'or' in the certificates. Is it to be considered as having been used in the sense of 'and'? We think the word was so used.

"The words are often convertible, and are frequently so treated in the construction of statutes and written instruments when good sense requires. (Ransom v. Rutherford County, 123 Tenn., 1, 130 S. W., 1057, Ann. Cas., 1912B, 1356; Bird v. State, 131 Tenn., 518, 175 S. W., 554).

"It was formerly held in several jurisdictions that a note payable to A or B, was not good as a promissory note, because of the uncertainty of the payee. (Citing authorities).

"Other cases treated such a note as though written payable to A and B. So read, the note would be evidence of an obligation to the payees jointly, and suit could be maintained thereon by both payees, but not by one. (Willoughby v. Willoughby, 5 N. H., 244; Spaulding v. Evans, Fed. Cas., No. 13216). This view was really approved in Walrad v. Petrie, 4 Wend., N. Y., 575, but the court felt bound by the cases referred to above.

"This court very distinctly adopted the New Hampshire construction in the early case of Quinby v. Merritt, 11 Humph., 439. In that case a certain written obligation was endorsed to the order of C. W. or W. L. Nance. C. W. Nance alone undertook to transfer it. This court said that, while such a paper was not valid as a promissory note, 'yet it is evidence

of a contract for the payment of money, and according to the cases referred to, and especially that in 5 N. H., is evidence of a contract with both the payees jointly; and they have, therefore, a joint interest in the fund secured by such note.' The court accordingly held that a suit could not be maintained by the endorsee, C. W. Nance; that it was necessary for C. W. and W. L. Nance both to endorse the paper to effect a valid transfer.''

Several cases from other jurisdictions are cited in support of the rule as above stated in Smith v. Haire.

In the Smith v. Haire case the court refers to sub-section 5 of section 8, chapter 94, Acts 1899 (Negotiable Instruments Act), wherein it provides that a promissory note may now be made payable to ''one or some of several payees,'' and the court states in the opinion, ''that this statute does not undertake to define the interests of such payees in the obligation, and we do not think it invariably precludes us from construing such an obligation to be one in which the payees have a joint interest,'' and concludes with the statement in that connection: ''In the particular case before us such a construction is clearly correct.'' And further on in the opinion on page 351 in that case, it is said:

''It thus appearing to us that the certificates of deposit must be dealt with as if payable to Mr. Haire and his wife. . . .''

We are of the opinion that the present case is controlled by the rule and the holding of the Supreme Court in Smith v. Haire. It at least presents as strong, if not a stronger case, for the application of the rule of joint ownership as the Smith v. Haire case. We are therefore of the opinion that Mrs. Mattie Mitchell, as a joint payee of the certificate of deposit in question, is entitled to be treated as a joint owner of the certificate, or of the deposit covered by the certificate of deposit and that she is entitled as such joint owner to one-half of the deposit evidenced by the certificate, and that the administrator of the estate of T. J. Gibson is entitled to one-half of the deposit.

It results, that to this extent the decree of the Chancellor is modified and reversed, and that the receiver of the bank will pay one-half of the deposit, or the dividends to be paid, to Mrs. Mattie Mitchell, and the other one-half to John W. Farley, the administrator of the estate of T. J. Gibson, deceased.

The cost of the cause and of this appeal will be paid by the administrator out of the assets of the estate of T. J. Farley, deceased. The cause will be remanded to the Chancery Court of Fayette county for the carrying out of this decree.

Owen and Heiskell, JJ., concur.