In the Matter of the Estate of AMELIA WALTER, Deceased.

Surrogate's Court, New York County, April 8, 1933.

*Adolph & Henry Bloch* [*Benjamin L. Blauvelt* of counsel], for the executor.

*Lesser & Lesser* and *David T. Rosen* [*Joseph I. Green* of counsel], for the next of kin.

*Olvany, Eisner & Donnelly* [*Samuel Michelman* of counsel], for the trustee in bankruptcy of St. Marks Hospital of New York City.

*Curtis, Mallet-Prevost, Colt & Mosle* [*E. H. Westerfield* of counsel], for the Isabella Home.

*Henry Wendt* [*Albert A. Kwass* of counsel], for the Lutheran Hospital of Manhattan.

*Stewart & Shearer* [*Edward S. Stewart* of counsel], for the New York Society for the Relief of the Ruptured and Crippled.

*Butler, Wyckoff & Reid* [*James Morrow* of counsel], for the Stuyvesant Square Hospital.

*Heywood & Benedict*, for the Society for the Relief of the Destitute Blind.

*Emmet, Marvin & Martin*, for the Home for Incurables.

FOLEY, S. I hold that the bequest to the St. Marks Hospital of an aliquot portion of the residuary estate was ineffectual. Prior to the death of the testatrix the institution filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. Its properties were taken over by a trustee in bankruptcy. The mortgage upon the building formerly occupied by the institution is now the subject of a foreclosure proceeding. The corporation discontinued the conduct and operation of its hospital and clinic and has entirely ceased to function. It is not necessary that the corporation be judicially dissolved to make the gift ineffectual. It is sufficient if the charitable purposes for which it was formed cannot be carried out. (*Matter of Mills*, 121 Misc. 147.) Furthermore, the charitable intentions of the testatrix in making the bequest can no longer be effectuated.

I hold further that the gift did not lapse. In my opinion there is presented here a situation where the *cy pres* doctrine should be applied. (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Matter of MacDowell*, 217 id. 454; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 id. 286; *Matter of Griffin*, 167 id. 71; *Matter of Mills, supra;* Zollman American Law of Charities, chap. 3, § 131, p. 85.) The surrogate now has ample power to administer a bequest for charitable purposes under that doctrine. (Pers. Prop. Law, § 12, subd. 2.) In the exercise of that power I direct that the bequest should be paid in equal shares to the other charitable beneficiaries named in the residuary clause of the will.

The application of the petitioner for an order directing the issuance of a supplemental citation in this accounting proceeding is, therefore, denied. In view of my determination, neither the petitioner nor the other alleged next of kin of the testatrix have any interest whatsoever in the estate, as there was intestacy as to no portion of the residuary estate.

Submit decree on notice settling the account accordingly.

Opinion filed January 20, 1934.

FOLEY, S. A decree settling the account of the executor and directing partial distribution of the estate of the testatrix was made on the 5th day of June, 1933. It reserved for final determination by supplemental decree the ultimate distribution of the estate and the determination of the question now presented of the validity of a bequest to St. Marks Hospital. St. Marks Hospital was one of seven charitable institutions to whom equal shares of the residuary estate of the testatrix were bequeathed by her will. The share to the hospital amounts to approximately $8,000. The other six institutions are The Society for the Relief of the Destitute Blind

of the City of New York and Its Vicinity, Isabella Home, Home for Incurables, New York Society for the Relief of the Ruptured and Crippled, Lutheran Hospital of Manhattan and the New York Skin and Cancer Hospital.

The testatrix died on August 6, 1931. Shortly before that date St. Marks Hospital filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. It discontinued the maintenance and operation of its hospital and clinic and ceased to actively perform the functions for which it was originally incorporated. It is unquestioned, therefore, that the objects and purposes for which the corporation was formed can no longer be effectuated.

It is claimed by certain next of kin of the testatrix that the gift to the hospital lapsed and that it passed to them as intestate property. In a prior decision (150 Misc. 512), I held that the gift did not lapse but that there was presented a situation where the *cy pres* doctrine should be applied by the court under its recently acquired jurisdiction in such cases (Pers. Prop. Law, § 12, subd. 2; *Sherman v. Richmond Hose Co.*, 230 N. Y. 462; *Matter of MacDowell*, 217 id. 454; *Trustees of Sailors' Snug Harbor v. Carmody*, 211 id. 286; *Matter of Griffin*, 167 id. 71; *Matter of Mills*, 121 Misc. 147; Zollman American Law of Charities, chap. 3, § 131, p. 85.) In the exercise of that power I directed that the bequest should be paid in equal shares to the six other charitable institutions named in the residuary clause of the will. Since the rendition of my decision, the next of kin have been permitted to intervene in the accounting proceeding of the executor. The question was considered anew and argument had and briefs submitted. Upon further consideration, with the next of kin now before the court, I see no reason to change my original determination.

It is argued by counsel for the next of kin that the *cy pres* rule may not be invoked for the reason that the bequest to the hospital was absolute and not a gift in trust. This contention has no merit. Under the provisions of section 12 of the Personal Property Law and the pertinent authorities, a gift to a charitable organization, although in outright terms, is, nevertheless, a gift in trust for the general purposes of the institution as defined by its certificate of incorporation. If it is reasonably certain that the testator intended that the bequest be devoted to purposes of charity, even where there is no formal trust, a " gift in trust will be implied." (*Matter of Durbrow*, 245 N. Y. 469, 477. See, also, *Sherman v. Richmond Hose Co.*, 230 id. 462; *Matter of Mills*, 121 Misc. 147; *Bowman v. Domestic & Foreign Missionary Society*, 182 N. Y. 494; *Ely v. Ely*, 163 App. Div. 320; *Manley v. Fiske*, 139 id. 665; affd., 201 N. Y. 546.) St. Marks Hospital was duly incorporated in March, 1890, for the

purposes of establishing, maintaining and operating a hospital, and to " render medical and surgical aid, advice and treatment to poor persons without charge therefor." The hospital was thus clearly a charitable incorporated institution. If it had continued its corporate benevolent activities, the legacy would unquestionably have been valid.

In *Manley* v. *Fiske* (*supra*), cited with approval in *Matter of Durbrow* (*supra*), the will disposed of the residuary estate as follows: " I desire my executors to divide the surplus among such American charities as they may think well of, and I would like these sums to be given to any society that assist poor needlewomen (seamstresses), whose toil is so poorly requited." It was held that a valid charitable trust was created. There, as here, it was contended that the statute was intended only to save trusts for charitable uses, and that no trust was created. The court said: " It is true that there are no express words creating a trust, as there are no express words of gift; but it is quite plain that a trust was intended. A trust is almost inseparably involved with a gift for charitable uses." Such is the situation here. The gift to St. Marks Hospital, therefore, was a gift to a charitable use. The hospital was legally capable of taking and holding a bequest of property for any of its purposes. Under the terms of the will, upon the death of the testatrix, the legacy of an equal share of the residuary estate had not lapsed but vested in the institution. (*Sherman* v. *Richmond Hose Co.*, *supra*; *Matter of Mills*, *supra*.) The institution had not, at the date of the death of the testatrix, surrendered its charter nor had its charter been revoked or terminated, nor had the corporation been dissolved by a judgment or decree of a court of competent jurisdiction. Its legal existence still continued. (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23, 31; *Brock* v. *Poor*, 216 id. 387.) But the discontinuance of the maintenance and operation of the hospital and clinic prevented the carrying out of the charitable purpose of the gift. The situation here is unlike that in *Wright* v. *Wright* (225 N. Y. 329), where the corporation had surrendered its charter which was formally accepted by official action. The question, therefore, is: Can the gift be applied to an analogous or parallel charitable use?

Since the enactment of the so-called Tilden Acts (Laws of 1893, chap. 701, as amd. by Laws of 1901, chap. 291, now Pers. Prop. Law, § 12; Real Prop. Law, § 113) no bequest to religious, educational, charitable or benevolent uses, in other respects valid under the laws of the State of New York, is to be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries in a will. If a trustee is named to execute the bequest,

the legal title to the property given vests in the trustee. If no person is named as trustee, then the title to such property vests in the Supreme Court. By the amendments to section 12 of the Personal Property Law and section 113 of the Real Property Law, made in 1931, the Surrogate's Court now has control over such gifts with the same powers as the Supreme Court. The decision of the Court of Appeals in *Sherman* v. *Richmond Hose Co. (supra)* is decisive on every question raised here. In referring to the Tilden Acts, it was stated: "These acts * * * did more than make applicable to this State the doctrine of charitable uses. They authorized the court itself to apply the *cy pres* rule not only where a trust existed but where property had been devised or bequeathed to a corporation authorized to take and hold it for charitable purposes." The court further pointed out: "If circumstances have so changed that a literal compliance with the terms of the gift is impracticable, then it may order the gift to be administered so as best to accomplish its purpose. Over such gifts it is given general control and while it is said the court may make such an order ' on the application of the trustee or the person or corporation having the custody of the property ' the language should not be construed as limiting the power of the court to act only when application is so made. It may act on information by the State. It may act of its own motion." That statement applies with exactness to the pending proceeding. The majority opinion of the court upheld the application of *cy pres*. The dissenting opinions invoked the reasons for inapplicability urged by the next of kin here.

The authorities relied upon by the next of kin to sustain their contentions are clearly distinguishable from the present case and are not applicable here. The primary test in these authorities was whether the legacy had lapsed under our law. "A lapsed legacy is one that has never vested or taken effect." (*Booth* v. *Baptist Church*, 126 N. Y. 215.) These authorities also held that where the legacy has legally and actually lapsed, the doctrine of *cy pres* cannot save the gift. The cases fall within two groups: In the first group are gifts to unincorporated charitable institutions where the gift was absolutely void because of the incapacity of an unincorporated association or institution to take. (*Hughes* v. *Stoutenburgh*, 168 App. Div. 512; *Mount* v. *Tuttle*, 183 N. Y. 358; *Ely* v. *Megie*, 219 id. 112; *Fralick* v. *Lyford*, 107 App. Div. 543; affd., 187 N. Y. 524; *Matter of O'Hanlon*, 147 Misc. 546; *Matter of Collier*, 97 id. 543; affd., 179 App. Div. 950.) In the second group of cases the legatee never had any legal existence whatsoever, or its legal existence had ceased before the death of the testator. (*Wright* v. *Wright*, 225 N. Y. 329; *Matter of Rappolt*, 140 Misc. 239.) *Matter of*

*O'Hanlon (supra)*, recently decided by my colleague, Surrogate DELEHANTY, does not support the contention of the next of kin. The surrogate stated in his opinion: " When there is no trust attached to the gift and none can be read into it by fair interpretation of the testator's words as he intended them * * * or when, though a trust is attached to the gift, the trust is specifically limited to a purpose which cannot be accomplished * * * the gift wholly fails if the intended recipient is non-existent or disabled to take; and intestacy results unless other clauses in the will cover the lapse." There is nothing in the language of Surrogate DELEHANTY's decision which in any way indicates an intention not to follow the general principles of law with respect to gifts for charitable purposes heretofore enunciated by the courts of this State.

All of the cases in similar situations to that here present a desire on the part of the next of kin to defeat the expressed intention of the maker of the will. The judicial trend to the contrary may be observed from the decisions of the Court of Appeals in recent years, which have progressively given support to gifts to charities and have overruled prior decisions wherein technical refinements were employed to defeat the testamentary intent. Thus, a gift for masses, previously construed as of total or doubtful validity, was sustained as a charitable trust in *Matter of Morris* (227 N. Y. 141). A gift to executors or trustees to select charities in their discretion was validated in *Matter of Cunningham* (206 N. Y. 601) and *Matter of Robinson* (203 id. 380), and the narrow construction in *Matter of Shattuck* (193 id. 446) was overruled by these cases and by *Matter of Frasch* (245 id. 174). Judge POUND (now chief judge) in *Matter of Morris (supra)* tersely defined this broadened attitude towards the validity of charitable gifts. He stated (at p. 145): " The test of reasonableness has no place as between the next of kin and the charitable trust, and the court will not take the estate from the trustees to bestow it upon the next of kin in disregard of the expressed desires of testatrix, but will, ' in a broad and liberal spirit ' uphold the will as it was written."

In the application of the *cy pres* rule the court should be guided to a large extent in the choice of a charity or charities by the general nature of other beneficiaries selected by the testator in the will. In the disposition of the residuum of her estate, the testatrix here designated as beneficiaries institutions which rendered aid and assistance to persons afflicted with maladies, deformities or infirmities. It must be assumed that the objects of these institutions were well known to the testatrix. Persons suffering such human ills were manifestly the principal objects of her solicitude. In applying the *cy pres* doctrine to the bequest to St. Marks Hospital,

I am of the opinion that by a direction that such bequest be paid in equal parts to the other institutions named in the residuary clause of the will, the charitable aims and desires of the testatrix will be best accomplished. " *Cy pres* applications are based, not on an arbitrary power in the court, but on a rule of construction, that gives effect to the general charitable intent of the testator despite the fact that his subsidiary intent to have the gift take effect in a particular mode has become impossible of realization." (Harvard Law Review, Dec. 1923, p. 265.)

It is interesting to note that in *Matter of Mills* (121 Misc. 147), where the facts were quite similar to those appearing in the case at bar, the identical conclusion was reached by Surrogate SLATER. I am in accord with the following statement by the learned surrogate in that decision: " In such a case, if for any reason the donee is incapable of effecting the trust the court will not allow the gift to fail for want of a donee. The doctrine of *cy pres* is applied by the court not only where a trust existed, but where property has been bequeathed to a corporation authorized to take and hold it for charitable purposes. ' If circumstances have so changed that a literal compliance with the term of the gift is impracticable, then it may order the gift to be administered so as best to accomplish its purpose.' "

Submit decree on notice directing distribution of the bequest as indicated herein and settling the account accordingly.