This is an action by the executors of Mary Esther Horton, also known as Etta H. Horton and Etta Horton, deceased, for a construction of her will. The defendants are nephews and nieces, grandnephews and grandnieces, by consanguinity and by affinity. None of the defendants answered the complaint. They contented themselves with the filing of briefs discussing the legal aspects of the case.
The decedent, Mary Esther Horton, died a resident of Bergen County, on April 24, 1948, leaving surviving four nephews and nieces and eight grandnephews and grandnieces of her own blood; three nephews and fourteen grandnephews and grandnieces by marriage.
The provisions of her will, of which a construction is sought, are as follows:
"SECOND: All the rest, residue and remainder of my estate of whatsoever nature and wheresoever situate, whereof I may die seized or possessed, I give, devise and bequeath to my Executors hereinafter named, they to collect the assets of my estate, and after paying all proper charges thereon and all expenses of my estate, they are to divide the net proceeds thereof equally among such of my nieces and nephews that shall survive me.
"THIRD: I nominate, constitute, and appoint my Attorney, ABRAM A. LEBSON, of 39 Park Place, Englewood, New Jersey, and my nephew, MELVILLE H. WESCOTT, of 93 Grove Street, Englewood, New Jersey, or the survivor thereof, as Executors of this, my Last Will and Testament, to serve without bond."
At first blush it seemed that nothing about the will required construction. However, it appears that the Melville H. Wescott appointed an executor in the third paragraph of the will and referred to therein as "my nephew, Melville H. Wescott" *Page 520 
is, in fact, not a nephew, but a grandnephew of Mrs. Horton's deceased husband. The executors disclose their uncertainty as to the identity of the residuary beneficiaries and ask the instructions of the court upon the following points:
1. Did the decedent intend, by her reference in the will to Dr. Wescott as "my nephew," to include him as a beneficiary under the residuary clause?
2. Did the testatrix intend to include as beneficiaries under the residuary clause, her other grandnieces and grandnephews by blood and by marriage?
Here we have presented a latent ambiguity for the explanation of which extrinsic evidence is admissible. Garabrant v.Callaway, 113 N.J. Eq. 424. In the construction of wills the primary and important task is to determine the intention of the testator. And, while extrinsic evidence may not be used to supply an intention, it may be used to explain an intention expressed in the will. Saving Investment and Trust Co. v. Crouch,93 N.J. Eq. 311; Fidelity Union Trust Co. v. Noll, 125 N.J. Eq. 106. And the reason for the reception of such evidence is to place the court in the situation in which the testatrix was at the time she executed the will. Noice v. Schnell, 101 N.J. Eq. 252.
Accompanying the complaint were two affidavits, in the nature of a stipulation of facts to which all of the parties appearing on the return of the order to show cause gave their assent. In one, the scrivener who drew the will, one of the prominent attorneys of Englewood, stated that he was instructed by Mrs. Horton to draw her will. She told him that she had no kin nearer than nephews and nieces and that there was quite a number of them. She stated that she did not desire to mention all of them in the will but did desire that her residuary estate should go to the nephews and nieces who survived her. During the course of the conversation Mrs. Horton referred to the Wescotts as being among her nephews, and especially directed that her "nephew," Melville H. Wescott, should be named as one of the executors. There was also an affidavit by Melville H. Wescott. He stated that the Wescotts had lived on terms of the closest intimacy with the *Page 521 
testatrix and since her husband's death in 1932 had been caring for and advising her. Dr. Wescott, particularly, had been her adviser in later years, holding a power of attorney and having access to her safe deposit box. Over the years the Wescotts had always addressed her as "Aunt Etta" and she had referred to them as her nephews.
While the proof is not strong, I think that when it is considered in conjunction with the terms of the will, the conclusion may be fairly drawn, that in the mind of Mrs. Horton there was no distinction between nieces and nephews and grandnieces and grandnephews. Nor did she differentiate between her relatives and those of her husband. To her they were all her kin. It seems clear that since she had no children, brothers or sisters, she intended that all those regarded by her as nephews and nieces should, if they survived her, share in her estate.
Therefore, the answer to both questions posed above is in the affirmative.
Judgment may be entered accordingly.