28 N.J. Super. 466 (1953)
101 A.2d 84
CAMDEN TRUST COMPANY, SUBSTITUTED TRUSTEE UNDER WILL OF GEORGE H. KRUEGER, DECEASED, PLAINTIFF,
v.
CHRIST'S HOME OF WARMINSTER, PENNSYLVANIA AND THE FIRST METHODIST CHURCH OF CHESILHURST, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 18, 1953.
*467 Mr. Edward I. Berry, attorney for plaintiff.
Mr. Wilfred B. Wolcott, attorney for defendant Christ's Home of Warminster.
Mr. W. Orvyl Schalick, attorney for defendant First Methodist Church of Chesilhurst.
*468 HANEMAN, J.S.C.
This is an action by the plaintiff, Camden Trust Company, substituted trustee, for advice as to the distribution of a fund held by it in trust under the fourth paragraph of the will of George H. Krueger, of the Borough of Chesilhurst, Camden County, New Jersey.
The testator died November 19, 1947, leaving a will and codicil which were admitted to probate January 6, 1948 by the Surrogate of Camden County.
By sub-sections (a) and (b) of the fourth paragraph of said will the decedent left the residue of his estate in trust, to use the income therefrom, and so much of the principle thereof as might be required, for the maintenance and upkeep of his home in Chesilhurst, which by paragraph Second of said will, he devised to his housekeeper, Louise Krause, for life. By subsection (c) of said fourth paragraph of his will he directed that upon the death of the said Louise Krause the residue of his estate be divided equally between Christ's Home of Warminster, Pennsylvania, and the First Methodist Church of Chesilhurst, New Jersey, subject to the following provision:
"Provided, however, that the share of the said The First Methodist Church shall not be paid to it until the expiration of five years from and after the date of my death. Should the said Church not then exist, the said share shall be paid to said Christ's Home, absolutely and forever."
Louise Krause is now deceased.
The sole question for determination is whether on November 19, 1952 The First Methodist Church of Chesilhurst existed within the meaning of subsection (c) of the fourth paragraph of decedent's will.
A review of the facts establishes that The First Methodist Church of Chesilhurst (hereinafter referred to as "First Methodist Church") was incorporated on August 13, 1917 under an act entitled "An act to incorporate trustees of religious societies," (now R.S. 16:1-1 et seq.). By the certificate of incorporation filed in the Camden County Clerk's office, the purpose for which it was formed was to *469 become an incorporated religious society subject to the discipline and usages of the Methodist Episcopal Church of the United States. Said certificate provides for a board of nine trustees, three to be elected each year. George H. Krueger was one of the incorporators and a member of the first board of trustees.
On November 19, 1952 the membership of said church had been reduced by death or removal to five persons, one of whom was a patient in the Home for the Aged at Lakeland, New Jersey. No elections or meetings of trustees or officers had been held for five years previous to that date, nor had any services been held in the church building since July 1949. The church has no resident pastor. It is nominally under the care of the pastor of the local Atco Church as a part of and known as a circuit charge, to which latter church the four remaining active members must travel to attend services. This pastoral charge (hereafter defined) includes three local churches located respectively at Atco, Sicklerville and Chesilhurst, New Jersey, all served by one clergyman.
On November 19, 1952 the building was and still is in a deplorable condition. Windows are broken out, the exterior woodwork is rotting in places, the roof leaks, and plaster is falling from the walls and ceilings. The building cannot be heated because the old hot-air heater is worn out and needs to be replaced. It cannot be lighted because the electricity has been shut off. On a sign by the church door the name of the pastor has been deleted.
The minutes for the years 1950, 1951 and 1952 show that the said church did not have a church school or Sunday school, nor a Woman's Society of Christian Service; that it made no contribution to the Connectional Funds of the Methodist Church, and that it paid nothing for ministerial support.
The contention of the respective charitable remaindermen is as follows: The Christ's Home of Warminster, Pennsylvania, assumes the position that the testator intended that on November 19, 1952 the First Methodist Church should be an active functioning religious society, and that since *470 it had failed to function as such and the church building had, to all intents and purposes, been abandoned and not used for the purposes of worship, it did not, in the light of testator's will, "exist." The five remaining members of the First Methodist Church contend that although it must be admitted that the facts above set forth as to the physical condition of the church building, and the failure to there hold church services are true, that since the charter of the corporation had not been forfeited, and since the proper action had not been taken by the parent church, i.e., "The Methodist Church," the technical existence of the First Methodist Church continued to exist on November 19, 1952 and complied with the intent of the condition set forth in testator's will. They further assert that although no services of any kind have been held at the site of the church building in Chesilhurst for some years past, services have been held for the members of said church at Atco, the corporation known as First Methodist Church now being a member of a "circuit charge," and has continued to exist.
The First Methodist Church, arguendo, refers to numerous passages of the "Discipline of the Methodist Church," which is the basic law of the parent church and, incidentally, of the local First Methodist Church. It refers particularly to section 102, which reads in part as follows:
"The local church is a connectional society of persons who have professed their faith in Christ, have been baptized, have assumed the vows of membership in The Methodist Church, and are associated in fellowship as a local Methodist church in order that they may hear the Word of God, receive the Sacraments, and carry forward the work which Christ has committed to his Church."
And section 104, which reads as follows:
"A pastoral charge shall consist of one or more churches which are organized under, and subject to, the Discipline of The Methodist Church, with a single pastoral-charge Quarterly Conference, and to which a minister is or may be duly appointed or appointable as preacher in charge. A pastoral charge of two or more churches is a circuit."
*471 And section 188, which reads as follows:
"1. With the consent of the presiding bishop and a majority of the district superintendents and of the District Board of Church Location and Building (704-7) of the district in which the action is contemplated, the Annual Conference may declare any church within its bounds discontinued or abandoned. It shall be the duty of its Board of Trustees (189-3) to make such disposition of the property thereof as the Annual Conference shall direct, and if no such lawful trustees remain, or if for any reason said trustees fail to make such disposition, then it shall be the duty of the trustees of the Annual Conference to sell or dispose of said property in accordance with the direction of the Annual Conference; and it shall be the duty of the trustees thus effecting sale to remove, in so far as reasonably possible, all Christian and church insignia and symbols from such property. In the event of loss, damage to, or destruction of such local church property, the trustees of the Annual Conference are authorized to collect and receipt for any insurance payable on account thereof, as the duly and legally authorized representative of such local church.
2. All the deeds, records, and other official and legal papers of a Methodist church that is declared to be abandoned or otherwise discontinued shall be collected by the district superintendent in whose district said church was located and shall be deposited for permanent safekeeping with the secretary of the Annual Conference.
3. Any gift, legacy, devise, annuity, or other benefit to a pastoral charge or church that accrues or becomes available after said charge or church has been discontinued or abandoned shall become the property of the trustees of the Annual Conference within whose jurisdiction the said discontinued or abandoned church was located.
4. When a church property has been abandoned by its membership and no abandonment action has been taken by the Annual Conference, and circumstances make immediate action necessary, the Annual Conference trustees may take control of the property, with the consent of the presiding bishop and the District Board of Church Location and Building of the district in which the property is located. And in the event of the sale or lease of said property the trustees of the Annual Conference shall recommend to the Annual Conference at its next session the disposition of the proceeds derived from such sale or lease."
The Discipline itself recognizes the distinction between a local church and a circuit charge. Here the First Methodist Church has lost its individual identity in becoming merged in a circuit charge. It is also interesting to note that although *472 there is affirmative action provided by section 188, paragraph 1, for an official declaration that a church has been discontinued or abandoned, the Discipline recognizes by section 188, paragraph 4, that a church may be actually abandoned by its membership without the intervention of the official action of the Annual Conference. Patently the Discipline recognizes that there does exist a distinction between a technical continued existence of an incorporated association known as a church and the actual existence of a body of individuals who constitute such a church and who continue to worship together and discharge the functions of a pastorate. The purpose of section 188 would seem to authorize the Annual Conference to liquidate the property, real and personal, of a pastorate where the congregation has discontinued or abandoned its primary purpose, to wit: to "hear the Word of God, receive the Sacraments, and carry forward the work which Christ has committed to his Church." Under the provisions of the Discipline, where a church has been declared "discontinued or abandoned," either the board of trustees, at the direction of the Annual Conference, or the individual conference itself, may sell and dispose of all of the property of said local church and the title thereto, and the proceeds thereof shall then be vested in said Annual Conference. In the light of the facts here existing, it would seem apparent that the local church society of the First Methodist Church could not now benefit directly by the gift here in question, but that rather the Annual Conference, or the parent church, to wit, The Methodist Church, would benefit by such a gift, and that in order to accomplish this result, the local church must be declared discontinued and must thereupon cease to exist as a local church.
It is further provided in the Discipline that each local church shall maintain a permanent church register and a card index or loose leaf membership record; that there shall be a church school, which shall include a Sunday school; that there shall be a Woman's Society of Christian Service, and that it shall make contributions to connectional funds and for ministerial support.
*473 In the light of the foregoing facts, it becomes necessary to consider the applicable law.
The paramount rule for the construction of testamentary instruments is that the court must strive to ascertain the intention of the testator as expressed by the words of the instrument. Stout v. Cook, 77 N.J. Eq. 153 (Ch. 1910); In re Horton's Estate, 5 N.J. Super. 518 (Ch. Div. 1949).
The cy pres doctrine can, of course, not be applied where the testator has directed what disposition shall be made of trust property, in the event of the failure of the use to which he directed it should be devoted. Mirinda v. King, 11 N.J. Super. 165 (App. Div. 1951).
In 35 C.J.S., at page 200, "existence" is defined as: "That which exists, that which actually is an individual thing; an actuality." At page 199 "exist" is defined as:
"To live, to have life or animation; also to be or continue to be, in fact; have actual being; to be in present force, activity, or effect at a given time, as in speaking of existing contracts, creditors, debts, laws, rights, or liens. Depending on the circumstances, it may imply completion for intended use, as in the case of a building, or a continuing, when applied to a condition or situation."
Also see Black's Law Dictionary (2d ed.), p. 464 (3d ed.), p. 772. No comparable cases have been found.
In the case of In re Harrington's Estate, 151 Neb. 81, 36 N.W.2d 577, 583 (Sup. Ct. 1949), however, testator and his wife made a joint will giving all their property to the survivor, and upon the death of such survivor and the payment of certain items, the residue was to be distributed two-fifteenths to the Board of National Missions of the Presbyterian Theoterian Church, U.S.A., and one-fifteenth to the Presbyterian Theological Seminary at Omaha, Nebraska, "if in existence, but if not in existence at the death of the survivor of said testators, then to said Board of National Missions of the Presbyterian Church, U.S.A." At the date of the death of the wife, who survived her husband, the seminary had closed its doors and ceased to *474 function as a teaching institution, but it retained its corporate existence and its assets, the income from which, by direction of the general assembly, was turned over to the McCormick Theological Seminary in Chicago. The board of missions claimed the legacy on the ground that the seminary had ceased to exist, and the Supreme Court of Nebraska upheld its claim, stating:
"The meat of the matter here is not whether plaintiff was a legal corporate entity at the death of testator, but whether or not it was then exising as a seminary, thus carrying out the objects and purposes for which the gift was given. As stated in In re Walter's Estate, 150 Misc. 512, 269 N.Y.S. 400, 401 [402]. `The corporation discontinued the conduct and operation of its hospital and clinic and has entirely ceased to function. It is not necessary that the corporation be judicially dissolved to make the gift ineffectual; It is sufficient if the charitable purposes for which it was formed cannot be carried out. Matter of Mills' Will, 121 Misc. 147, 200 N.Y.S. 701. Furthermore, the charitable intentions of the testatrix in making the bequest can no longer be effectuated.' * * * We conclude that testatrix never intended to give her estate to a mere named non-functioning corporation which at her death, had admittedly ceased to and was unable to function and carry out the objects and purposes for which it had been incorporated and for which her bequest was given * * *. A bequest to a charitable corporation by name, without further restriction or limitation as to use, is in fact not a bequest to the corporation as such, but to the objects and purposes for which such corporation was organized."
It is apparent that the seminary lost its identity. Its identity could not be traced into a supposed existing corporation. So it is with the case at bar. Although there may have been an attempt to permit the corporate life to continue, the corporation did not, in fact, function as a local church, both as defined in the Discipline as well as in the common acceptance of those words. The remaining members of the First Methodist Church were not "associated in fellowship as a local Methodist Church in order that they may hear the Word of God, receive the Sacraments, and carry forward the work which Christ has committed to his Church," nor did they perform the other functions required by the Discipline of a "local" church.
*475 It is to be remembered that the testator himself was a resident of Chesilhurst, New Jersey, and a member of the first board of trustees of the Methodist Church of Chesilhurst, New Jersey, being as well a charter member of said church. The alternative gift, in the event of the nonexistence of said first-named church, would seem further to demonstrate his interest in the local church.
As in In re Harrington's Estate, supra, the objects and purposes of the gift could not be carried out by the First Methodist Church. The mere fact that the donee had not been legally declared non-existent in the sense that its charter be revoked or forfeited did not make it possible to effectuate the charitable purposes of the testator. The testator desired that the local church designated in his will receive these funds and administer them consistent with the provisions of section 102 of the Discipline. This is no longer possible of accomplishment.
I find, therefore, that the testator intended a gift to the local church if it were, on November 19, 1952, then functioning in all of the branches required by the Discipline as a local church. In the light of the above facts, the test established by the testator has not been met. The church did not "exist" in the definition to be accorded to that word consistent with the testator's intent.
Plaintiff's prayer that this court retain jurisdiction of this action and any parties in interest for further leave to apply for directions as to the administration will be granted.
Judgment will be entered accordingly.