MONTCLAIR NATIONAL BANK AND TRUST COMPANY, TERENCE J. McHUGH AND THOMAS A. CULLEN, EXECUTORS UNDER THE WILL OF FRANCIS M. CRAWLEY, DECEASED, PLAINTIFFS, v. SETON HALL COLLEGE OF MEDICINE AND DENTISTRY, SETON HALL UNIVERSITY, EILEEN CRAWLEY PHELAN AND MONTCLAIR NATIONAL BANK AND TRUST COMPANY, EXECUTORS UNDER THE WILL OF MARY EMELIA CRAWLEY, DECEASED, EILEEN CRAWLEY PHELAN, FRANCIS THOMAS CRAWLEY, CALDWELL COLLEGE FOR WOMEN, THE ROMAN CATHOLIC DIOCESE OF NEWARK, NEW YORK PROVINCE OF THE SOCIETY OF JESUS, LITTLE SISTERS OF THE POOR, NEWARK, NEW JERSEY, HOME FOR THE AGED, ST. JAMES HOSPITAL OF NEWARK, ST. JOSEPH'S HOSPITAL, ST. MARY'S HOSPITAL, NEW JERSEY COLLEGE OF MEDICINE AND DENTISTRY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 5, 1966.

422

*Messrs. Connell & Andresakes* for plaintiff executors (*Mr. Raymond C. Connell,* appearing).

*Messrs. Gassert & Murphy* for defendants Seton Hall College of Medicine and Dentistry, Seton Hall University, and The Roman Catholic Diocese of Newark (*Mr. Thomas H. Gassert,* appearing).

*Mr. Arthur J. Sills,* Attorney General, for defendant New Jersey College of Medicine and Dentistry (*Mr. James S. Oliver,* appearing).

*Messrs. Crummy, Gibbons & O'Neill* for Little Sisters of the Poor (*Mr. Frank J. Vecchione,* appearing).

*Messrs. Whiting, Moore, Hunoval & Herman* for defendant St. James Hospital of Newark (*Mr. Ira C. Moore, Jr.,* appearing).

*Mr. William F. Johnson,* for defendant St. Joseph's Hospital.

HERBERT, J. S. C. Plaintiffs Montclair National Bank and Trust Company, Terence J. McHugh, and Thomas A. Cullen, executors under the will of Francis M. Crawley, deceased, have sued for instructions concerning payment of a fractional share of the residue of the estate.

Mr. Crawley, a resident of Montclair, died on May 21, 1963, leaving a last will and testament dated March 20, 1962, which was duly probated on June 7, 1963. After a number of gifts, absolute and in trust, to various beneficiaries (about which there are no questions), the will provides as follows for the disposition of the balance of the estate:

"SEVENTEENTH: All the rest, residue and remainder of my estate of whatsoever nature and wheresoever situate, I give, devise and bequeath as follows:

1. One-Eighteenth (1/18) to Seton Hall University Medical School [*sic*] at Jersey City, New Jersey.

2. One Eighteenth (1/18) to Seton Hall University at South Orange, New Jersey.

3. One-Ninth (1/9) to my sister, Mary Amelia Crawley.

4. One-Ninth (1/9) to my niece, Eileen Crawley Phelan.

5. One-Ninth (1/9) to my nephew, Francis Thomas Crawley.

6. One-Ninth (1/9) to the Caldwell College for Women.

7. One-Ninth (1/9) to the Roman Catholic Diocese of Newark, New Jersey.

8. One-Ninth (1/9) to New York Province of the Society of Jesus of New York City, New York.

9. One-Ninth (1/9) to the Little Sisters of the Poor, of Newark, New Jersey.

10. One-Ninth (1/9) to be equally divided among St. Joseph's Hospital, in Paterson, New Jersey, St. Mary's Hospital in Orange, New Jersey, and St. James Hospital in Newark, New Jersey.

In the event that any of the residuary beneficiaries herein named shall predecease me, I give, devise and bequeath his or her said fractional share equally to surviving residuary beneficiaries."

It is the legacy to "Seton Hall University Medical School," item No. 1 of this list of ten residuary legacies, which raises questions that need to be answered here. Seton Hall College of Medicine and Dentistry was incorporated in 1954. Although the testator did not use the full corporate title, there can be no question that he identified this corporation sufficiently by the name he used in his will.

Until some time in the spring of 1965 Seton Hall College of Medicine and Dentistry was actively engaged in medical and dental education, carrying on its activities at Jersey City. It was the only medical school in the State, and only one other New Jersey dental school was in operation. On May 3, 1965, beset by financial difficulties that threatened to close its doors, it made an agreement in writing with New Jersey College of Medicine and Dentistry, a public corporation created by the New Jersey Medical and Dental College Act of 1964. *L.* 1964, *c.* 231 (*N. J. S. A.* 18:22–150 *et seq.*) By the agreement Seton Hall College of Medicine and Dentistry sold its assets, tangible and intangible, to the State's corporation. There was no transfer of responsibility for existing debts.

Without attempting to describe a rather complex situation, for present purposes it is enough to say that by the agreement of May 3, 1965 Seton Hall College of Medicine and Dentistry formally gave up all possibility of continuing as an operating educational institution.

The executors on May 25, 1965 were ready to pay out each of the shares provided for in paragraph Seventeenth of the will. On that date each 1/9 share had a value of $87,052.11, and each 1/18 share had a value of $43,526.05. About December 10, 1964, when Seton Hall College of Medicine and Dentistry was still functioning, $1,500 was paid to it on account of its legacy. Allowing credit on account of a 1/18 share for that partial payment leaves a balance of $42,026.05. Though Seton Hall College of Medicine and Dentistry no longer is carrying on the educational functions for which it was formed, its corporate existence continues, and if it were now to receive moneys under the Crawley will, they would be put to good use in paying some of its debts.

The executors and Seton Hall College of Medicine and Dentistry argue that the existence of the college as a functioning unit at the testator's death vested the legacy in it and that nothing has happened since to cause a divestiture. This argument would treat the legacy in question like a bequest to

an individual who, though living at the testator's death, does not survive long enough to receive payment from the executor. Such a private bequest would vest in the short-lived legatee and would be collectible by his personal representative. 96 *C. J. S. Wills* § 1203, *p.* 1044 (1956). The authorities, however, show that control over charitable gifts has been extended beyond the point of vesting and even beyond actual payment.

 Unlike an ordinary private bequest, a gift to a charitable corporation without use restrictions does not give the corporation license to use the bequest as it pleases. Rather, it is a gift to a charity in trust, to be employed in such manner as the corporation sees fit for the accomplishment of its proper corporate purposes. 4 *Scott, Trusts* (*2d ed.* 1956), § 348.1, *p.* 2553; *De Camp v. Dobbins,* 29 *N. J. Eq.* 36, 50 (*Ch.* 1878), affirmed 31 *N. J. Eq.* 671 (*E. & A.* 1879); *American Bible Society v. American Tract Society,* 62 *N. J. Eq.* 219, 220 (*Ch.* 1901); *Rowe v. Davis,* 138 *N. J. Eq.* 122, 125 (*Ch.* 1946); *Fidelity Union Trust Co. v. Ackerman,* 18 *N. J. Super.* 314, 326 (*Ch. Div.* 1952). In effect, the public is the beneficiary of a charitable bequest or devise; the named recipient is merely chosen to administer the property. Recognizing this, our courts seek to preserve the social benefit deriving from charitable gifts by sustaining them whenever possible. *Howard Savings Institution v. Peep,* 34 *N. J.* 494, 501 (1961); *Mirinda v. King,* 11 *N. J. Super.* 165, 173 (*App. Div.* 1951).

 The fact that a gift vested in a charitable corporation at a testator's death, or upon termination of a life estate, does not govern the making of actual payment. Nor is continuing corporate existence of controlling significance. In *Nichols v. Newark Hospital,* 71 *N. J. Eq.* 130 (*Ch.* 1906), testator bequeathed the residue of his estate to the Newark Hospital. The hospital was incorporated in 1857 with the object of erecting and maintaining a general hospital in the City of Newark. When testator executed his will in 1861, and at his death in 1866, the corporation still existed but its plan had never been put in operation. The time for payment hav-

ing come, the vice-chancellor referred the matter to a master to ascertain whether Newark Hospital was able to function according to its stated purposes to execute the "trust" imposed on the fund. If Newark Hospital could not perform, the direction was that it be supplanted as beneficiary by one or more of the active hospitals of Newark. Reference may also be made to *In re Harrington's Estate,* 151 *Neb.* 81, 36 *N. W. 2d* 577 (*Sup. Ct.* 1949); *In re Mills' Will,* 121 *Misc.* 147, 200 *N. Y. S.* 701 (*Surr. Ct.* 1923); *In re Walter's Estate,* 150 *Misc.* 512, 269 *N. Y. S.* 402 (*Surr. Ct.* 1934), in each of which a charitable corporation remained in existence on the date of a testator's death but had ceased to operate according to its purposes *before* that date. And see *Snow v. President and Trustees of Bowdoin College,* 133 *Me.* 195, 175 *A.* 268 (*Sup. Jud. Ct.* 1934); *In re Shelton's Estate,* 87 *N. Y. S. 2d* 853 (*Surr. Ct.* 1942), in both of which charitable corporations were in existence at date of testator's death and ceased functioning *after* that date but before distribution.

■ Paying a legacy to a charitable corporation which can no longer carry on its charitable functions would defeat the terms of the trust implicitly impressed on the charitable gift. Payment to Seton Hall College of Medicine and Dentistry, which will never again carry on the educational activities for which it was incorporated, would benefit the creditors of the college, not the public. Such payment should not be made. If this conclusion calls for a finding concerning the intent of the testator, one can be made without hesitation—and will be made. He surely did not intend his money to go to a college in the process of dissolution, to be used merely to pay its debts. He chose a functioning institution as beneficiary, and by that choice demonstrated his interest in carrying on the publicly important work of educating young men and women. I find nothing in his will which says or suggests anything to the contrary; nothing to indicate a desire or willingness that his gift be paid over by his executors to a corporation which is merely winding up its affairs.

■ Additional support for the conclusion that the executors should not pay Seton Hall College of Medicine and Dentistry is to be found in *Morristown Trust Co. v. Morristown*, 82 *N. J. Eq.* 521 (*Ch.* 1913). There a bequest was made to the Society for Providing Medical Attendance to the Worthy Poor of the Township of Morris. The society disbanded about eight months after the testator's death, the members having knowledge of the legacy when they acted. The court treated the dissolution of the named legatee as a "rejection" of the legacy. Seton Hall College may be regarded as having rejected its bequest from Mr. Crawley when, before payment, it gave up its functions as an educational institution. The significant thing is not the bare existence of an entity to receive payment but the existence of a charitable corporation or association capable of carrying on the work. *Nichols v. Newark Hospital, supra.*

■ There remains the question of what disposition of the legacy should be ordered by the court. Should *cy pres* be applied or should the legacy fail and the money be divided among the other residuary legatees? *N. J. S. 3A* :3–14. *Cy pres* is said to be an "intent enforcing doctrine." *Howard Savings Institution v. Peep, supra*, 34 *N. J.*, at *p.* 501. It is applied only where the court finds that the specific intent of the donor was but a means to, and subordinate to, a general charitable intent. The theory is that if the testator had realized that a gift according to his particular purpose would be frustrated, he would have ordained an alternate disposition according to his general plan. *Wilber v. Owens*, 2 *N. J.* 167, 177 (1949). Our Supreme Court has defined "general charitable intent" as follows:

"* * * the term 'general charitable intent' ordinarily used by courts articulating the doctrine does not require an intention to benefit charity generally. It requires only a charitable purpose which is broader than the particular purpose the effectuation of which is impossible, impracticable, or illegal." *Howard Savings Institution v. Peep, supra*, 34 *N. J.*, at *p.* 501.

■ Did the testator in the instant case manifest a general charitable intent requisite for application of *cy pres?* Some of the parties maintain that the form of the gift indicates the testator had no general charitable intent. *Morristown Trust Co. v. Morristown, supra,* is cited as dispositive. In that case, already discussed, a bequest was made to the Society for Providing Medical Attendance to the Worthy Poor of the Township of Morris. Vice-Chancellor Howell, from the words of the legacy, found an absence of general charitable intention. He quoted (82 *N. J. Eq.,* at *p.* 524, *et seq.*) Vice-Chancellor Kindersley in *Clark v. Taylor,* 1 *Drew.* 642, 61 *Eng. Rep.* 596 (*Chancellor's Ct.,* 1853) :

"'Now, there is a distinction well settled by the authorities. There is one class of cases in which there is a gift to charity generally, indicative of a general charitable purpose, and pointing out the mode of carrying it into effect. If that mode fails the court says the general purpose of the charity shall be carried out. There is another class in which the testator shows an intention, not of general charity, but to give to some particular institution, and then if it fails because there is no such institution, the gift does not go to charity generally. That distinction is clearly recognized, and it cannot be said that wherever a gift for any charitable purpose fails it is nevertheless to go to charity.'"

The reasoning of this precedent is not persuasive, and I do not feel constrained to apply it. Following the *Morristown Trust Company* case would make it necessary to say that this testator, with a general charitable bequest in mind, would have worded his gift: "To Seton Hall University Medical School for advancement of medical and dental education." Such a form of bequest would be redundant and pointless. As already stated, a gift to a charitable corporation with no further directive is a gift for the purposes for which the charity was organized. Because of this, and contrary to the *Morristown Trust Company* case, I am of the belief that a gift to a particular institution, without instructions for use, may be considered evidence of a general charitable intention.

A result opposed to the *Morristown Trust Company* case was reached in *Nichols v. Newark Hospital, supra,* on facts

more nearly identical to those of the instant case. (The opinion, however, contains no express finding of general charitable intent on the part of the testator, thus suggesting the possibility that the point may not have been argued.)

The line of inquiry to be pursued in ascertaining absence or existence of general charitable intent was suggested in *Howard Savings Institution v. Peep, supra.* There the court said:

"As mentioned above, in ascertaining the existence of a general charitable intent the court must determine whether the testator would have wanted the trust funds to remain devoted to a charitable purpose similar to, but not the same as, he provided, or to go to his next-of-kin. For the answer, we must first look to the will. A provision for reverter or gift over upon failure of the particular trust purpose or the designation of heirs or other persons as residuary legatees may evidence absence of a general charitable intent. *Cf. Bankers Trust Co. v. N. Y. etc., Animals,* 23 *N. J. Super.* 170 (*App. Div.* 1952) ; see also 6 *New Jersey Practice, Clapp, Wills & Administration,* § 275, *p.* 34 (1950). On the other hand, if there are no such provisions or if he has specifically provided for all his heirs and indicated that was all he wanted to bestow upon them, or if he has expressly declared he is not interested in his heirs, then it would seem that he had no desire to withdraw the trust funds from charitable channels. Comment, 39 *Yale L. J., supra,* at *p.* 318." (34 *N. J.,* at *p.* 504)

Mr. Crawley's will provides expressly for a number of relatives. The indications are strong that he decided with care what "he wanted to bestow" upon members of his family and had no thought of their getting more by failure of any of his gifts to charity. At the end of the residuary clause quoted at the beginning of this opinion, there is a gift over which by its terms is applicable to the shares of individuals who might fail to survive the testator. There is no provision for a gift over in the event of a failure of any of the charitable bequests. The absence of such a provision as to charitable beneficiaries, especially when combined with the presence of a gift over applicable only to bequests to individuals, indicates the testator "had no desire to withdraw the trust funds from charitable channels."

 I find, therefore, that the bequest provided by the language of the will for Seton Hall College of Medicine and Dentistry was prompted by a general charitable intention and that application of the *cy pres* doctrine is called for.

Though the finding just made fits within a pattern set by precedent, any attempt to state an intention for a testator about a situation which it is hard to believe he ever considered is unsatisfactory for obvious reasons. The requirement of a general charitable intention is criticized in *Bogert, Trusts* (*2d ed.* 1964), § 436, *p.* 424:

"* * * Unless the settlor expressly accepted the cy pres rule for his trust, or negated the application of it, it seems very doubtful whether he gave any thought to the disposition of the charitable fund in the case of failure of the charity. He assumed that the charity could and would be carried out. Secondly, if it be assumed that a finding of an actual intention to have a general or special charitable intent can be made by the court on the basis of the donor's situation and interests and the language of the trust instrument, it can be argued that the facts usually available form a very slender basis for such a finding, that the courts are in reality deciding what they think would have been the intent of the settlor if he had given attention to the matter, and that directly opposite results in cases where the facts are similar prove the unsatisfactoriness of the search for the settlor's intent."

In *Howard Savings Institution v. Peep, supra,* the court agreed with Professor Bogert to a considerable degree:

"* * * it is well to keep in mind that it is a surmised rather than an actual intent which the courts enforce through application of the doctrine. Rarely does a settlor contemplate the possible non-fulfillment of his precise purpose. Therefore, the court must make an educated guess based on the trust instrument and relevant extrinsic evidence as to what he would have intended had he been aware of the contingency which has frustrated the exact effectuation of his expressed intent." (34 *N. J.*, at *p.* 501)

While courts explain that their objective in *cy pres* cases is the realization of the testator's intention, a strong argument can be made that their primary aim is preserving the benefits of charitable gifts for society. I am inclined to the view that a better approach to the problem would be to ac-

cept the proposition that a man who includes in his will a
bequest to a charitable organization has subjected that much
of his estate to the application of the *cy pres* doctrine unless
he also includes in his will reasonably clear language to the
contrary. This, I think, would be more realistic, for I believe
analysis of the *cy pres* cases, especially the more recent ones,
indicates that this is what the courts have actually been
doing.

Since the doctrine of *cy pres* is to be applied, the
organization which is to receive the fund must now be de-
termined. *Cy pres* is "the doctrine of nearness or approxima-
tion." *MacKenzie v. Trustees of Presbytery of Jersey City,*
67 *N. J. Eq.* 652, 672 (*E. & A.* 1904). Under the principle,
the property must be applied by the court to some charitable
organization or purpose falling within the general intention
of the testator. That general intention in this case appears
to have been the furtherance of medical and dental education.
The recipient named was the only institution in this State
engaged in this specialized work. The New Jersey College of
Medicine and Dentistry is carrying on the work of the Seton
Hall College of Medicine and Dentistry and is now the only
New Jersey institution engaged in medical education. It is
also in many ways the legal successor of the Seton Hall
school, having taken over facilities and franchises and having
assumed responsibilities toward student body and faculty.
Accordingly, I find that the intention of the testator would
be most nearly approximated if the New Jersey College of
Medicine and Dentistry became by *cy pres* successor bene-
ficiary of the residuary portion in question. The executors
will be so instructed in conformity with this opinion.

There are a few addtional matters which should be men-
tioned although none of them changes the conclusions which
have already been reached.

The executors point to the other objects of Fran-
cis Crawley's generosity as evidence of a particular intention
in his gift rather than a general one. Out of nine institu-
tions selected by him as residuary legatees when he made his

will, one was the Roman Catholic Diocese of Newark and the others were all affiliated in some manner with the Roman Catholic Church. This selection, it is argued, shows the testator was more interested in the sponsorship of a particular institution than in the general nature of the work being carried on. I cannot accept that argument. It exaggerates the importance of the choice of a sponsor. The true beneficiaries of a gift to a medical school will be the students. *Cf. Application of Italian Benevolent Institute*, 157 *N. Y. S. 2d* 485 (*Sup. Ct.* 1956), modified 5 *A. D. 2d* 816, 170 *N. Y. S. 2d* 992 (*App. Div.* 1958), affirmed 197 *N. Y. S. 2d* 402 (*App. Div.* 1960), *In re Kensington Hospital for Women*, 358 *Pa.* 458, 58 *A. 2d* 154, 3 *A. L. R. 2d* 73 (*Sup. Ct.* 1948). If there were any choice here between New Jersey College of Medicine and Dentistry and a comparable school in the State affiliated with the Roman Catholic Church, Mr. Crawley's interest in Catholic institutions would be relevant, but there is no such choice available.

It is also urged that the hospitals named as residuary legatees in the Crawley will should be selected to receive the share originally designated for Seton Hall College of Medicine and Dentistry. This contention depends upon an authorization in the Seton Hall charter "to establish and maintain hospitals, clinics and dispensaries or to utilize and to administer under contractual agreement established hospitals, clinics and dispensaries or any of the facilities thereof; * * *" These corporate powers, however, were merely incidental to the operation of a medical and dental school. I do not consider that the hospitals are in any real sense carrying on the charitable functions formerly performed by the college.

A contention has also been advanced that Seton Hall University at South Orange, New Jersey, which is designated as one of the residuary legatees, should be named to take by *cy pres*. Although the College of Medicine and Dentistry was a separate corporation, it did have an official connection with the University. Its charter, as amended provided for 15 members of the corporation and further provided that 8 should be

officers of the University or selected by the University's board of trustees. What has already been said about the claim of the hospitals applies in substance here. When Mr. Crawley provided a gift for Seton Hall College of Medicine and Dentistry, he chose medical and dental education as an object of his bounty. Seton Hall University does not now offer a course of study in those fields.

\* \* \* \* \* \*

This matter came before the court on the return of an order to show cause based upon the executors' amended complaint. Answers were filed by some of the defendants. Certain exhibits were marked and other facts were stipulated, but no witnesses testified. The procedure thus followed was approved by all counsel who appeared before the court. There was, of course, oral argument, and briefs were filed.