The Honorable Laura L. McClure State Representative, 119th District 202 So. 4th Osborne, Kansas 67473
Robert C. Harder, Secretary Department of Health and Environment Landon State Office Bldg., 9th Floor Topeka, Kansas 66612-1290
Dear Representative McClure and Secretary Harder:
As secretary of the Kansas department of health and environment and representative of the one hundred nineteenth district you have each requested our opinion on the following questions involving the provisions contained in 1994 senate bill no. 800.
1994 Senate bill no. 800 in part regulates confined feeding facilities. Its provisions are concerned with "preventing surface and subsurface water pollution and soil pollution detrimental to public health or to the plant, animal and aquatic life of the state. . . ." K.S.A. 65-171d, as amended by L. 1994, ch. 213, sec. 1.
The following general overview of the situation surrounding these questions was presented by Dr. Harder to the Senate agriculture committee on February 22, 1994:
 "KDHE's technical regulations for confined feeding operations became effective on 1 July 1967. In short, facilities over 1000 head were required to obtain a permit for water pollution control; facilities greater than 300 head were required to register with the state and install controls only if they have a pollution potential; and facilities less than 300 head required a permit only if they had the potential to pollute or utilize some sort of wastewater control system, such as a lagoon. These technical requirements, adopted in 1967, have never been amended. They remain in effect today."
The amendment of these statutes has led you to ask "[w]hat does K.S.A.65-171d(k)(2) mean by the words facility which exists on the effective date of this act?"
K.S.A. 65-171d(k)(2), as amended by L. 1994, ch. 213, sec. 1 states:
 "(k) The separation distances required pursuant to subsection (i) shall not apply to:
. . . .
 "(2) confined feedings facilities which exist on the effective date of this act and register with the secretary before July 1, 1996; or" (Emphasis added).
The term "exist" has not been defined in this statute or in the water or land pollution regulations, or by Kansas case law. Therefore, we look to other jurisdictions' interpretation of this word.
The court in In re Harrington's Estate, 36 N.W.2d 577, 582 (Ne. 1949) and Camden Trust Co. v. Christ's Home of Warminister, Pa., 101 A.2d 84,87 (NJ 1953) have held that the terms exists and existence mean "that which exists, that which actually is an individual thing; an actuality. Exist means to live, to have life or animation; to be or continue to be, in fact; have actual being; to be in present force, activity, or effect."
The court in State et al. v. State Toll Bridge Authority, 82 S.E.2d 626,634 (Ga. 1954), held that for the purposes of a zoning ordinance "[e]xcavation and engineering work and forms constructed do not constitute an `existing structure' within the meaning of a statute relating to building restrictions. The words `existing building' in a zoning ordinance means a building which was in existence at the time of the adoption of the ordinance."
This same type of logic was echoed in another zoning case where the court held that "[t]o constitute an existing use, `the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors and architects.'" Pohrman v. Klamath County Commissioner,550 P.2d 1236, 1238 (Or. 1976).
Therefore, based on these cases, we opine that a facility would be deemed to exist for the purposes of K.S.A. 65-171d(k)(2), as amended by L. 1994, ch. 213, sec. 1, if the facility has been erected or is in place prior to July 1, 1994, and is capable of confining such animals as set out in the definition of a confined feeding facility. K.S.A. 65-171d(c)(2), as amended by L. 1994, ch. 213, sec. 1. However, existing facilities are not limited to those "which [have] not caused any problems" (KDHE policy statement, June 27, 1994). This phrase would expand the statute beyond what the legislature stated. KDHE has the ability to further regulate this area through the implementation of proper regulations. However, even if this is an appropriate subject of regulation, the goal of this phrase cannot be accomplished simply by issuing a policy statement. "Statutory words are presumed to have been and should be treated as consciously chosen and, when understanding of their ordinary and common meaning, intentionally used with the legislature having meant what it said. . . . No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the statutory language used, the defect is one which the legislature alone can correct." Kansas Ass'n of Public Employees v. Public EmployeesRelations Bd., 13 K.A.2d 657, 661-662 (1989).
Your next question is whether "K.S.A. 65-171d(k) [is] an exception to K.S.A. 65-171d(i), or is K.S.A. 65-171d(k) a general amnesty provision?"
Black's Law Dictionary defines the word exception with regard to statutory laws in the following manner:
 "An exception in a statute is a clause designed to reserve or exempt some individuals from the general class of persons or things to which the language of the act in general attaches. The office of an `exception' in a statute is to except something from the operative effect of a statute or to qualify or restrain the generality of the substantive enactment to which it is attached, and it is not necessarily limited to the section of the statute immediately following or preceding." Blacks Law Dictionary 560 (6th Ed. 1990).
By contrast, the term amnesty is described as "[a] sovereign act of forgiveness for past acts, granted by a government to all persons (or to certain classes of persons) who have been guilty of crime or delict, generally political offenses — treason, sedition, rebellion, draft evasion). . . . Amnesty is the abolition and forgetfulness of the offense . . . usually addressed to crimes against the sovereignty of the nation." Id., at 82-83.
Although we are not sure why you are concerned with classifying this provision, we do not believe amnesty is the correct term for the provision since amnesty is "an act of the sovereign power granting oblivion, or a general pardon for a past offense, . . . [and] is usually exerted in behalf of certain classes of persons who are subject to trial but have not yet been convicted." 59 Am.Jur.2d Pardon and Parole, sec. 6 (1987). Rather, the provision seems to be an exception or a grandfather clause. A grandfather clause is defined as a "[p]rovision in a new law or regulation exempting those already in or a part of the existing system which is being regulated. An exception to a restriction that allows all those already doing something to continue doing it even if they would be stopped by the new restriction." Black's Law Dictionary, supra at 699. The act being regulated was not statutorily prohibited until the new provisions took effect, therefore subsection (k) is not so much a pardon of past acts, as it is an allowance to continue previously legal acts that are now subject to regulation.
Finally, you both ask in varying forms the following questions: "Does K.S.A. 65-171d(k)(3)(B) apply to facilities with an animal unit capacity of less than 300 when the facility expands to a capacity that exceeds 300 animal units." "Can exempt facilities expand under K.S.A. 65-171d(k)(3)(B) without meeting the separation distances?"
K.S.A. 65-171d(k)(3), as amended by L. 1994, ch. 213, sec. 1 states:
 "(k) The separation distances required pursuant to subsection (i) shall not apply to:
. . . .
 "(3) expansion of a confined feeding facility, including any expansion for which an application is pending on the effective date of this act, if" (A), In the case of a facility with an animal unit capacity of 1,000 or more prior to the effective date of this act, the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion; or (B) in the case of a facility with an animal unit capacity of less than 1,000 prior to the effective date of this act and, the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion the animal unit capacity of the facility after expansion does not exceed 2,000." (Emphasis added).
Some of the confusion regarding the application of this act is caused by the fact that subsection (i) deals with separation requires of "new construction or new expansion of a confined feeding facility." Subsection (k) also deals with expansion of certain facilities. This confusion centers around the fact that facilities that do not hold 300 or more animal units are not generally regulated at all and therefore, it is argued that a facility that is originally exempt from regulation because of the smallness of the operation could not expand up to 2,000 animal units and continue to be exempt. Although we can understand the concerns expressed, the legislature did not choose to enact a clause that would specifically address the issue of going from under 300 to several thousand. Instead, they used the threshold of being either above or under 1,000 animal units prior to this act.
"When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be" Randall v. Seeman, 228 Kan. 395, Syl. para. 1 (1980). In this case the statute plainly states that expansion of less than 1,000 animal units is exempt from the separation requirements as long as the facility was in existence prior to July 1, 1994, the expansion does not decrease the distance between the facility and the nearest habitable structure that existed prior to the expansion and the expansion does not exceed 2,000 animals. Alternatively, an existing facility with more than 1,000 animal units could expand to any number if "the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion."
In conclusion, it is our opinion that an existing facility pursuant to K.S.A. 65-171d(k)(2), as amended by L. 1994, ch. 213, sec. 1 is one that has been erected or is in place prior to July 1, 1994 and is capable of meeting the definition of a confined feeding facility. This provision of the statute is an exception or a grandfather clause. A facility which exists prior to the effective date of this act can expand as long as the provisions of K.S.A. 65-171d(k)(3) as amended by L. 1994, ch. 213, sec. 1 are complied with.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Jane Stattelman Assistant Attorney General
RTS:JLM:MJS:bas