## Drake et al. v. Chappel et al.

Dec. 12, 1941.

Howard H. Whitehead for appellants.

John J. Winn for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Dr. R. Q. Drake, who died in 1905, devised $1000 to the Howards Mill Baptist Church to be placed in the hands of the trustees who should use the income from the fund for the support of the church. This action was instituted by the heirs at law of Dr. Drake alleging that the church had ceased to exist and that therefore the purpose of the bequest had failed, entitling them to the $1000 fund. The trustees of the church denied that it had ceased to exist and took the position that the church was entitled to continue to use the fund under the terms of the will. The chancellor adjudged that the church was a going concern and entitled to continue in the use of the income from the fund and accordingly dismissed the petition. The appeal is from that judgment.

It is conceded by the appellees that in the event of an actual and final abandonment of the purposes of the trust, that is, if the church had ceased to exist, the trust fund would revert to the heirs of the donor. The only question confronting us therefore is one of fact as to the cessation of the existence of the church.

The evidence discloses that the $1000 fund in controversy was loaned by the trustees to L. C. Wills, a member of the board of trustees, and that the loan was secured by mortgage of a farm. Mr. Wills at the time of the filing of this action was approximately eight years in arrears in the payment of interest but the evidence seems to establish that the mortgage furnishes ample security for the loan. With the exception of three or four years around 1912 the church was an active and going concern up until the year 1932 although church was never held with any great degree of regularity. In the year 1932 the membership had dwindled until there were only eight or ten active members. The proof is rather hazy as to whether church was ever held from 1932 to 1939. A number of witnesses testified that they thought that church was held several times during this period but the evidence seems fairly to indicate the contrary.

Soon after the filing of this action in April, 1939, the church sprang into activity. A pastor was secured and shortly thereafter a protracted meeting was held which appears to have been well attended. Wills began paying $10 per month on past-due interest. It is the theory of appellants that this new activity was due to the efforts of Wills, who desired to keep the benefit of

the loan made to him, and there is little doubt that he was the motivating force behind this revival of interest. It seems clear, however, that if the church had actually ceased to exist and the rights of appellants had accrued the action of Wills and the few remaining members of the church in re-establishing its activity was not sufficient to reinvest the church with the right to retain the fund. See People v. Braucher, 258 Ill. 604, 101 N. E. 944, 47 L. R. A., N. S., 1015. We are not concerned, however, with the management of the fund and the evidence with reference thereto is pertinent only as illustrating motives and the weight to be given the testimony of Wills and some of the other church members.

While no church was held from 1932 to 1939, it appears that the church property was kept in repair. A new roof was put on the church in 1935 and more than a year before this action was filed Wills endeavored to make arrangements for repairs and painting on the inside of the church. It also appears that during the years in which no church was held Wills, and possibly others of the church, consulted at various times with the pastor of the Baptist church at Mt. Sterling looking to a continuation of the activities of the church and the selection of a pastor. It is also established that the premises around the church had been taken care of by Wills, who kept the weeds and grass cut.

In Scott-Lees Collegiate Institute v. Charles et al., 283 Ky. 234, 140 S. W. (2d) 1060, we reaffirmed the frequently enunciated rule that charitable trusts are favored in law and that mere delay or temporary suspension in carrying out their objectives will not be allowed to defeat them. Considered in the light of this rule we think the chancellor's finding that the church had not ceased to exist but was merely in suspension must be sustained. The fact that the church was kept in repair during the seven-year period in which no church services were held and that consultations were held during this period with a view to obtaining a pastor and continuing services clearly indicates that there had been no complete abandonment of the church but that it still retained a spark of life. Also, as pointed out by the chancellor in his opinion, the fact that the church so quickly after the institution of this action began a period of real activity is further persuasive of the fact that it had not actually ceased to exist.

Counsel for appellants says that he feels that his clients are probably entitled to receive stars in their crowns for injecting the breath of life into this defunct religious society by filing this action but insists that they are desirous of more temporal benefits from their labors and much prefer the $1000 to the merited stars. We feel compelled, however, to sustain the decision of the chancellor denying them the temporal and more substantial benefit sought, leaving them to console themselves with the knowledge that the beneficent breeze engendered by the filing of this lawsuit has fanned into living fire the small and dormant spark of vitality remaining in the church so dear to their ancestor, thereby giving renewed vigor to the worthy purpose he held to stimulate the religious fervor of the community by his generosity.

Judgment affirmed.