CLIFFORD D. PIERCE, JR., Administrator Cum Testamento Annexo of the Will of James H. Tharp, Deceased, Appellee, v. RUTH LIDDELL THARP, Talmadge E. Mugrage, Union Planters National Bank, Unknown Heirs of James H. Tharp, Deceased, Mrs. Frankie Tharp McKown and State of Tennessee, Appellants.—430 S.W.(2d) 787.

Western Section, at Jackson. December 15, 1967.

Certiorari Denied by Supreme Court July 5, 1968.

Montedonico, Gilliland, Heiskell, Davis, Canale & Glankler, Memphis, Quentin L. Housholder, Nashville, for Ruth Liddell Tharp, appellant.

C. M. Murphy, and Murphy & Jarvis, Memphis, for Mrs. Frankie Tharp McKown, appellant.

Joseph W. Evans, Memphis, and Leslie H. Dills, Seattle, Wash., for Talmadge E. Mugrage, appellant.

Pierce, Rice, Bratcher & Pierce, Memphis, for appellee.

BEJACH, J. In this cause we have before us for construction the will of James H. Tharp who died a resident citizen of Memphis, Shelby County, Tennessee February 16, 1964. The Union Planters National Bank & Trust Company of Memphis, Tennessee, whose correct name is Union Planters National Bank of Memphis, was named in the will as executor and trustee, but it declined to serve and Clifford Pierce, Jr., a member of the Bar of Memphis, Tennessee, was appointed as administrator cum testamento annexo.

Suit was filed by the administrator cum testamento annexo for construction of the will and instruction and guidance in administration of the estate. The original bill was amended to include defendants claiming to be heirs of James H. Tharp; and Phil M. Canale, Jr., District Attorney General, as representative of the State of Tennessee for enforcement of the trust created by the will, was also added as a party defendant. Mrs. Frankie Tharp McKown, as adoptive sister of the testator, and Talmadge E. Mugrage, as natural brother, claim that the trust undertaken to be established by the testator is unenforceable and void, and consequently that they or one of them is entitled to inherit the residuary estate of the testator. They also claim that Mrs. Ruth Liddell Tharp is not the

widow of James H. Tharp, deceased, because he was never legally divorced from a former wife, and therefore that she is not entitled to share in the estate of James H. Tharp, deceased, except as provided for in the will and that if she is legally his widow, she cannot dissent from the will because of an antenuptial contract. They also contend that she has already elected to take under the will. Mrs. Ruth Liddell Tharp claims that she is the legal widow of James H. Tharp, deceased, that the antenuptial contract does not affect her rights either to take under the will or to dissent therefrom, and that she has protected her right to dissent from the will at the termination of this litigation as authorized by section 31-609 T.C.A. She also claims that she was a partner with her deceased husband in the liquor store at 3029 Jackson Avenue, Memphis, Tennessee, and entitled to a one-half interest in that store, regardless of what rights she has or may have under the testator's will, or as his widow.

Proof in this cause shows that, as reflected by the 1910 census, two children, Talmadge Hughes, aged 2 and Roy Hughes (age not given) were inmates of the day nursery and half-orphanage at 762 Walker Avenue, Memphis, Tennessee; and, "As reported to the Census Bureau", their place of birth was Alabama. On October 17, 1911, Roy Hughes was adopted by decree of the Probate Court, Shelby County, Tennessee by James L. Tharp and his wife, Sally, his name being changed at that time to James Heckle Tharp. At this time, the Tharps had a 7 year old daughter, Frankie B. Tharp, now Frankie B. Tharp McKown, one of the defendants in this cause. On February 5, 1912, Talmadge Hughes was adopted by decree of the Probate Court by Harry O. Mugrage and his wife Lulu, his name being changed to Talmadge E. Mugrage.

Extensive investigation by the guardian ad litem in this cause indicates that there are no other possible heirs of James H. Tharp, and that all necessary parties are before the court in this cause.

James H. Tharp's adoptive father died in 1915 and his adoptive mother died in 1916. James H. Tharp and his sister then moved to Texas to live with a maternal aunt. Their parents left funds for their education, and both of them were graduated from Trinity University. Shortly after graduation, Tharp married Frances Taylor, from whom he was divorced November 2, 1936. He then married Mabel Callicutt. The record shows a decree of divorce granted by the Chancery Court of Crittenden County, Arkansas which indicates that they were married June 19, 1916. A certified copy of the marriage license showing that James H. Tharp and Mabel Callicut were married at Hot Springs, Arkansas June 19, 1914 is also in the record. The divorce decree in Crittenden County, Arkansas was entered January 31, 1947. On January 31, 1950, James H. Tharp and Ruth Liddell Stevenson executed an antenuptial contract, and on February 14, 1950 they were married in Union County, Mississippi. After his marriage to Ruth L. Stevenson, James H. Tharp, the testator, returned to Memphis and engaged in several business activities. Finally he operated a liquor store, which he owned at the time of his death, and from which he accumulated a substantial fortune, amounting to between $400,000 and half a million dollars. Mrs. Tharp claims to own a one-half interest in the liquor store at 3029 Jackson Avenue, Memphis. That is one of the contested issues in this cause. Other than the question of the ownership of

the liquor store, the principal issue turns on construction of Item VIII of the testator's will, and especially the first part of same, which is as follows:

## "ITEM VIII.

All the rest, residue and remainder of my property, real, personal and mixed, of which I may die seized and possessed, wheresoever situated, I give, devise and bequeath to my Trustee, hereinafter named, for the following uses and purposes:—

It is my will that the annual net income from my estate be given as an award to the individual, or team, who, during the year said income was received by my Trustee, has contributed most towards the solution of the problem of alcoholism in the opinion of my Trustee. As suggestions merely and not as limitations, my Trustee may obtain the opinions of one or more of the following: the President of the American Medical Association, the Chairman of the Board of Trustees of Alcoholic Foundation, Inc., New York, N. Y., the President of the Memphis and Shelby County Medical Association, the Editor of the Memphis Commercial Appeal or any successor newspaper, the Editor of the Memphis Press-Scimitar, or any successor newspaper, any other informed source or sources. It is my will that my Trustee be granted sole, absolute and final discretion in choosing the annual donee of the award and in the event of lack of unanimity of opinion by consultants, my Trustee shall determine said donee by lot or otherwise in its absolute discretion.

In the event any individual or team should ever solve the problem of alcoholism whereby alcoholics can ingest alcohol without the concomitant allergy of the body and

obsession of the mind, in the opinion of my Trustee, and with concurring opinions of the Chairman of the Board of Trustees of the Alcoholic Foundation, Inc., New York, N. Y., for three successive years, then, in that event, this trust shall terminate and the entire corpus of said trust shall be given, devised and bequeathed to said individual or team so solving said problem of alcoholism as the final award of this trust.''

The Chancellor held that the antenuptial agreement did not bar the rights of Mrs. Tharp, either under the provisions of the will or to dissent therefrom. He held that Mrs. Tharp is the legal widow of James H. Tharp, sustained the alcoholic trust created by Item VIII of testator's will, or at least so much thereof as disposed of the annual income from the estate; but he held that Mrs. Tharp was not a partner of the deceased, nor entitled to a half interest in the liquor store as such. Talmadge E. Mugrage and Mrs. Frankie Tharp McKown perfected broad appeals from the Chancellor's decree, and Mrs. Ruth Liddell Tharp appealed from that portion of the decree which denies her ownership of a one half interest in the liquor store. A demurrer of the Union Planters National Bank of Memphis had been sustained by consent, and it is no longer involved in this suit.

In this Court, as appellants, Talmadge E. Mugrage and Mrs. Frankie Tharp McKown have filed numerous assignments of error, which we deem it unnecessary to copy into this opinion, and Mrs. Ruth Liddell Tharp, as appellant, has filed one assignment of error, which is: ''The Court erred in its conclusion that the decedent was the sole owner of the liquor store and that the widow was not its joint owner.''

As is stated in the brief of counsel for Mrs. McKown, there are five questions which must be answered on this appeal. They are as follows:

"1. Whether the alcoholic trust is a good and valid charitable trust either with respect to the corpus or the annual income therefrom.

2. Whether the widow is limited to taking that which she was left by the will by reason of the antenuptial agreement.

3. Whether the widow is limited to taking what she was left in the will, by reason of her election to take under the will.

4. Whether the widow is limited to take that which she was left by the will because she is not truly the widow of the deceased, he having not been properly divorced from his former wife.

5. Whether the widow owns a one-half interest in the liquor store in question."

Before answering the above questions, we must first dispose of a motion made by defendant Frankie Tharp McKown to strike so much of the reply brief for the administrator cum testamento as argues to uphold the alcoholic trust. The ground asserted for this motion is that "The said administrator filed his original bill to construe the last will and testament of the decedent; such bill was sworn to and made under oath and said sworn bill took the very clear position that the alcoholic trust was unenforceable, a position absolutely inconsistent with the theory now urged upon this Appellate Court."

Paragraph III of the administrator's original bill alleges "Complainant would show that the will and codicils

aforesaid lack clarity as to the testator's true intentions and that certain provisions and sections as hereinafter mentioned and described are inconsistent, uncertain, indefinite and ambiguous so that complainant is unable to ascertain from the documents themselves the testator's intention, and, consequently, he is unable to know or to determine the respective rights of the parties interested in said will and codicils, or to know or determine the manner or extent of his duties as administrator cum testamento annexo. Complainant would further show that many provisions and sections of the will and codicils as aforesaid are so indefinite and uncertain that he is unable to safely act on any construction he might give such sections, and that he is advised that it is his duty to apply to your honors for advice and direction, to the end that he may fully and accurately execute the trust and duties created and imposed upon him by said sections, and all other doubtful and uncertain sections and provisions of said will and codicils, that none of the parties interested therein may suffer, and that he, himself, may not become liable as to the result of an error of his judgment.''

In addition, paragraph V, section 6, alleges

''Complainant would show that the trustee nominated in the will has refused to act or to serve as such because certain ramifications and provisions in the terms of the trust by the will and codicils are such as to confuse reasonable minds, and are such as to border on the ridiculous or fantastic. For example, the will provides that the trustee shall receive all of the residuary estate and first is to use the annual net income to give an award to an individual or team who during the immediate preceding year has contributed most toward solution of the problem of alcoholism. The trustee is not required but is advised

that he may inquire from various associations, newspapers, etc. regarding the matter, the first part of said provision simply deals with contributions to the solution of alcoholism and then a subsequent provision is added which looks to the solution of the problem of alcoholism by development or discovery of a means by which alcoholics may 'ingest alcohol without concomitant allergy of the body and obsession of the mind.' Complainant respectfully submits that the provisions of said trust and the solution to be looked toward as therein outlined border on fantasy and are such as to be extremely indefinite, vague, and unenforceable. Your complainant desires instructions as to the meaning of said provisions and clarifications of the manner in which any fund might be turned over to a trustee. He would further invite the court's attention to the fact that no provision is made for determining said trust except that if the problem is solved, the trust can be terminated at the end of three (3) successive years. Complainant would show that a trustee should be considered and named when the terms and conditions of the testator's will and codicils are construed and their provisions clarified so that the estate can be proceeded with in accordance therewith.''

It is the contention of counsel for Mrs. McKown that the language used by the administrator cum testamento annexo is inconsistent with the position now taken, on appeal, by the administrator in support of the Chancellor's ruling, and that he is thereby estopped from asserting such support. We do not consider the language used in paragraph V of the administrator's original bill as necessarily inconsistent with the language of paragraph III of said original bill, nor that the language used should estop him from advocating an affirmance of the

Chancellor's ruling which sustained the alcoholic trust provided for in the will. In any event, in an amended bill filed by the administrator cum testamento annexo, which is the same pleading that made Mrs. McKown a party to this cause, the administrator cum testamento annexo in paragraph III of said amended bill alleges: "That your complainant in further investigation of the various aspects of this cause, is of the opinion that the trust hereinabove referred to, and more particularly discussed in said original bill, might be construed as being a charitable trust, and that, consequently, and since the appointed trustee has declined and refused to serve, as aforesaid, and since the beneficiaries under said trust are not now represented, the District Attorney General for the State of Tennessee, Shelby County, Tennessee, should also be added as an additional defendant in this cause for the purpose of protecting the rights of said unknown beneficiaries." The amended bill indicates, and it is the position taken by the administrator cum testamento annexo, that at the time he filed the original bill he considered the trust created by testator's will as a personal trust, which would be void because of violating the rule against perpetuities, but that, as stated in the amended bill, and as was held by the Chancellor, the trust is a charitable trust, and therefore valid, he was willing to acquiesce in the Chancellor's ruling, and, accordingly, had undertaken to sustain same in his brief on appeal. We commend the attitude and position of the administrator cum testamento annexo, and, accordingly, overrule the motion of Mrs. McKown to strike part of the administrator's brief.

The first question to be answered is, "Is the alcoholic trust a good and valid charitable trust, either with respect to the corpus or the annual income therefrom?"

Alcoholism, as defined in Webster's New International Dictionary is "A diseased condition of the system, brought about by the excessive use of alcoholic liquors". The New Century Dictionary defines it as "The morbid effects of excessive use of alcoholic beverages". In Public Acts of Tennessee, 1963, Chapter 52, section 4, it is defined, "Alcoholism as used herein has reference to any condition of abnormal behavior or illness resulting directly or indirectly from the chronic and habitual use of alcoholic beverages, stimulants or sedatives." See section 33-803 T.C.A. (1966 Supp.).

Both Mrs. McKown and Talmadge E. Mugrage contend that the trust is void and unenforceable; but secondarily, each of them contends that she or he, as the case may be, is therefore entitled to inherit all of the residuary estate of James H. Tharp. Mrs. McKown's position is that Mugrage, having been adopted into an entirely different family, ceased to have any rights of inheritance from his natural brother, and consequently that she, as his sister by adoption, is entitled to inherit all of Tharp's estate. On the other hand, Mugrage, as the natural brother of James H. Tharp, deceased, claims that Mrs. McKown, as an adoptive sister, has no right of inheritance from her brother by adoption, and that he alone is, therefore, entitled to all of his natural brother's residuary estate. If the trust is sustained, however, in either or both of its aspects, the secondary contentions of Mrs. McKown and Mugrage become immaterial.

The Chancellor was of opinion that the disposition by the testator of the income from his residuary estate constituted a valid trust, and that it was unnecessary for him to decide whether or not the disposition of the corpus of his residuary estate made by the testator was

valid. Mrs. McKown's counsel contend that the testator's provision for disposition of the corpus of his residuary estate constitutes the primary or major trust, and that the provision for disposition of the annual income from the residuary estate is merely incidental to the primary or major trust. Consequently, it is their position that if the ultimate or final disposition of his residuary estate as made by the testator in his will cannot be effectuated, the disposition of the contemplated income must also be ineffectual, and that Mrs. McKown is entitled to both corpus and income therefrom from the date of the testator's death. The main contention of both Mrs. McKown and Talmadge E. Mugrage, with reference to the alcoholic trust, is that it is impossible of accomplishment, and therefore void and unenforceable. They also contend that the definition of "alcoholism" as prescribed by the testator—"In the event any individual or team should ever solve the problem of alcoholism whereby alcoholics can ingest alcohol without the concomitant allergy of the body and obsession of the mind", under the doctrine of ejusdem generis, must also be applied to the term "alcoholism" as used in the testator's disposition of the income from his residuary estate. We cannot agree to this contention. In our opinion, the two provisions of the will are separate and independent each of the other. In our opinion, the provision for disposition of the annual income from the testator's residuary estate is the primary or major trust, and the provision for award of the corpus, "in the event any individual or team should ever solve the problem of alcoholism, whereby alcoholics can ingest alcohol without the concomitant allergy of the body and obsession of the mind" is merely a gift over of the corpus of the estate which will terminate the first or primary

trust. In that aspect of the case, it is wholly immaterial whether or not the gift over, as or at the termination of the original or primary trust, is valid. The validity or invalidity of a gift over, as or at the termination of a charitable trust, has no effect on the validity of the charitable trust, itself. Restatement Second Trusts, section 401. Also, it is immaterial, in the instant case, that the trustee named in the will has refused to serve as such, because, in Tennessee, a trust will not fail for want of a trustee, the courts having authority to appoint a trustee. Section 35-120, 35-121 T.C.A. Carson v. Nashville Bank & Trust Co. (1959), 204 Tenn. 396, 321 S.W.2d 798. Trusts for charitable uses are highly favored by the courts of equity and will be upheld although the parties to be benefited may not be defined with the precision which would be requisite in trusts of an ordinary and private description. Ratto v. Nashville Trust Co. (1942), 178 Tenn. 457, 159 S.W.2d 88, 141 A.L.R. 341. Even as to the gift over in the instant case, we think it is good. There is a vast amount of testimony in the record to the effect that it is impossible for an alcoholic to be cured so that he can become a social drinker, which seems to have been the desire of the testator. Even that may be possible, however, in the future. As was said by the learned Chancellor in his opinion, "A devise or bequest made fifty years ago to reward the first person who lands on the moon, probably would have been held unenforceable and therefore void, but certainly it would not be so held today. Our conclusion is that the alcoholic trust in the case at bar, as provided for in the will of James H. Tharp, in both aspects of same, is valid, and our answer to question I is in the affirmative.

This eliminates any claim of either Mrs. Frankie Tharp McKown or Talmadge E. Mugrage to participate in the distribution of the estate of James H. Tharp.

The second question to be answered by this Court is, "Whether the widow is limited to taking that which she was left by the will by reason of the antenuptial agreement." The antenuptial contract provides, "All of the property now owned by either of the parties, or to be acquired by either of the parties in the future, shall be and remain the sole and separate property of each of the parties, free from all marital rights of any kind or character of the other party." It also provides in the following paragraph, "It is further agreed and contracted by and between the parties that in the event of a separation or divorce between the parties hereto, whether the said separation or divorce occurs at the instance of either the party of the first part or the party of the second part, that the party of the second part, Ruth Liddell Stevenson, shall have no claim for alimony of any kind or character against the party of the first part except as follows:" Mrs. Tharp testified, over objection made at the hearing, that the antenuptial contract was entered into solely for the purpose of taking care of the possibility of a divorce, and she was corroborated by the testimony of Mr. Harold Ratcliff, a member of the Memphis Bar, and who is the attorney that drafted the antenuptial contract in question. He testified to the same effect as Mrs. Tharp. Such testimony was competent under authority of Baker v. Baker, 24 Tenn.App. 220, 142 S.W.2d 737. The Chancellor admitted the testimony and found as a fact that the antenuptial contract was not binding. In Crouch v. Crouch, 53 Tenn.App. 594, 385 S.W.2d 288, this Court, Middle Section, held that an ante-

nuptial contract which limits the liability of a husband in the event of divorce is void on grounds of public policy. In Key v. Collins, 145 Tenn. 106, 236 S.W. 3, the Supreme Court held that language of an antenuptial contract must be clear and specific to cut off the right of a survivor in the estate of the deceased spouse. The Chancellor held that the antenuptial contract did not curtail Mrs. Tharp's rights in the estate of James H. Tharp, deceased, either under his will or as his widow. Only Talmadge E. Mugrage and Mrs. Frankie Tharp McKown appealed from that ruling of the Chancellor, and we have ruled that they have no interest in the estate of James H. Tharp, deceased. We, therefore, agree with the Chancellor that the widow, Mrs. Ruth Liddell Tharp, is not limited in this cause by her antenuptial contract.

The third question to be answered is, "Whether the widow is limited to taking what she was left in the will, by reason of her election to take under the will."

The doctrine of "Election" arises where testator gives away property belonging to a legatee or devisee, but also applies where the party asserts conflicting rights to testator's property by claiming under the will and making separate claims against the estate. Elmore v. Covington, 180 Tenn. 128, 172 S.W.2d 809.

Equitable doctrine of "Election" involves the notion that no man may claim inconsistent rights with regard to the same subject, and that anyone who asserts an interest under an instrument, such as a will, is bound to give full effect thereto and may not both accept and reject the instrument or avail himself of the benefits thereof as to a part and defeat the provisions thereof as to other parts. Elmore v. Covington, 180 Tenn. 128, 172

S.W.2d 809. One may not take a beneficial interest under a will and at the same time set up any right or claim, even if otherwise legal and well founded, which shall defeat, or in any way prevent the full effect and operation of the will. Elmore v. Covington, 180 Tenn. 128, 172 S.W.2d 809.

 It is contended by Mrs. McKown that Mrs. Ruth Liddell Tharp, as widow of James H. Tharp, deceased, has accepted and received part of the provisions made for her by her deceased husband's will, and, consequently, that she has elected to take under the will and is therefore limited to the provisions therein made for her. Counsel for Mrs. Ruth Liddell Tharp, however, contend that she has not elected to take under the provisions of her deceased husband's will, and that she may and has reserved her right to elect until after the conclusion of the present litigation: first, because under the provisions of section 31-609 T.C.A. she has that right and has preserved it by means of an order entered in the Probate Court extending her time to elect; second, because Mrs. Tharp testified that she has not elected to take under the will, and that what she has received from the administrator may be charged against her share of the estate; and third, because the administrator testified that the widow had not elected to take under the will and that the advances made by him to her were, in his opinion, less than her share of the estate whether she takes under the will or dissents therefrom. Also, as stated above, with reference to whether or not the widow was limited by her antenuptial contract, Talmadge E. Mugrage and Mrs. Frankie Tharp McKown are the only persons who question the rights of Mrs. Tharp in this cause, and, since we have ruled that they have no interest in the estate, they have no right to question whether the widow takes under the

will or by dissent therefrom. We therefore conclude that Mrs. Ruth Liddell Tharp, as widow of James H. Tharp, deceased, has not up to the present time, elected to take under the will of her deceased husband, or to dissent from said will, and we hold that she may make such election after the conclusion of the present litigation. It is our opinion, however, that if Mrs. Tharp asserts her right as owner of a half interest in "Jim Tharp's Liquor Store", to which we hold hereinafter that she is entitled, she must, in that case, elect to dissent from the will.

The fourth question to be answered is "Whether the widow is limited to take that which she was left by the will because she is not truly the widow of the deceased, he having not been properly divorced from his former wife." The Chancellor held that Mrs. Ruth Liddell Tharp was legally married to the deceased, James H. Tharp, and that she is now his legal widow. The validity of the marriage of James H. Tharp to Ruth Liddell Stevenson was questioned by Mrs. Frankie Tharp McKown, at first, on the ground that James H. Tharp had never been divorced from a former wife, Mabel Callicutt, but when a certified copy of the divorce decree granted by the Chancery Court of Crittenden County, Arkansas was produced, she changed her objection to a contention that the Chancery Court of Crittenden County, Arkansas had no jurisdiction, because the parties were residents of Shelby County, Tennessee, and not residents of Crittenden County Arkansas. The Chancellor held the Crittenden County divorce decree to be valid, on the ground that no evidence was offered to show that the parties were not, at the time of the divorce decree, residents of Crittenden County, Arkansas. We think the Chancellor was correct in that ruling, and, especially so, with reference to the

absence of proof that Mrs. Mabel Callicutt Tharp was not at that time a resident of Crittenden County, Arkansas. Also, as has been said with reference to questions two and three, since neither Mrs. Frankie Tharp McKown nor Talmadge E. Mugrage have any interest in the estate of James H. Tharp, deceased, neither of them has any right, in this litigation, to question the rights of Mrs. Ruth Liddell Tharp, as widow of James H. Tharp, deceased.

The fifth and last question to be answered is, "Whether the widow owns a one-half interest in the liquor store in question." The Chancellor held that she did not, and she appealed from that portion of his decree.

The record shows that prior to 1951, the license for "Jim Tharp's Liquor Store" was in the name of James H. Tharp, alone; but that in 1952, Mrs. Tharp helped her husband obtain the liquor license for his store outside of the then authorized limits for liquor stores in Memphis, Tennessee, which was then at East Parkway. She interviewed all of 144 families residing in the area, and personally obtained 140 of their signatures to a petition favoring the store. Shortly thereafter, according to the testimony of Mrs. Tharp, she and her husband attended a liquor dealers association meeting at the Hotel Peabody, where Mr. Bert Bates said to Mr. Tharp in Mrs. Tharp's presence, "You should make your wife a partner so, in case something happened to you, she would have something to live on." Thereafter, in December 1952, the application for 1952 license shows, in the handwriting of James H. Tharp, deceased:

382

"We, James H. Tharp
and Partnership",
Ruth L. Tharp

following which are the words of application for the
license to sell alcoholic beverages for the year 1953 at Jim
Tharp's Liquor Store. This application is signed by both
James H. Tharp and by Ruth L. Tharp (Mrs. J. H.)
and the application was sworn to by both of them before a
Notary Public on December 26, 1952. Also, in the appli-
cation for license to engage in the business of retailer of
alcoholic beverages in Memphis, Shelby County, Tennes-
see, executed January 8, 1953, written partly in the hand-
writing of James H. Tharp, deceased, and signed by
both James H. Tharp and Ruth L. Tharp, there appears
question 10: "Will the business be conducted by you in-
dividually or as a general or limited partnership", on
which the word partnership is circled, and in the hand-
writing of James H. Tharp appears, "With husband,
James H. Tharp". Also, in answer to question 11, "If
general or limited partnership, give names of partners,
and addresses and amounts of investment of each part-
ner", there appears in the handwriting of James H.
Tharp, "James H. Tharp ($20,000.00) and on the next
line, "Ruth L. Tharp (Mrs. James H.)." Below that, on
the third line is $10.00 and other consideration". In an-
swer to question 15, "Give the name and address of every
person who shall have charge, management or control
of the licensed premises", there appears in the hand-
writing of James H. Tharp, "Partners, only". This in-
strument is signed by both James H. Tharp and
Ruth L. Tharp. In addition, the Federal stamp was
changed to show the names of both James H. Tharp and

Ruth L. Tharp. Annually, thereafter, the record shows that licenses were issued in the name of both James H. Tharp and Ruth L. Tharp. Since the death of James H. Tharp, the licenses have been issued in the name of Ruth L. Tharp.

Since the acquisition of her interest in the partnership was acquired by Mrs. Tharp as a gift, the question has been raised as to whether or not the gift was completed by delivery. By way of answer to that question, counsel for Mrs. Tharp cite and rely on the cases of McConnell v. Fayette County Bank (1928), 8 Tenn. App. 461 and Marlin v. Merrill, 25 Tenn.App. 328, 156 S.W.2d 814. In the McConnell case, this Court held that a time deposit certificate payable to the order of T. J. Gibson or Mrs. Mattie Mitchell entitled Mrs. Mitchell, as a joint owner of the certificate or of the deposit covered by the certificate of deposit, to a half interest in same. In Marlin v. Merrill, this Court, Middle Section, held that the donee of an automobile, who had a bill of sale for same, was entitled to possession of the automobile in question against the donor's estate, notwithstanding the fact that the deceased had retained possession of the automobile during his lifetime. We think that the gift of one-half interest in his liquor store made by James H. Tharp to Ruth Liddell Tharp in December 1952 was a completed gift, and that, as against the administrator cum testamento annexo of his estate, she is entitled to same. It is, however, our opinion, as stated above, that since the will of James H. Tharp, deceased, disposes of the liquor store as if he were the sole owner of same, if Mrs. Tharp elects to take her one-half interest in the liquor store, she cannot claim anything under the provisions of his will.

The net result is that we conclude the decree of the Chancellor in this cause must be affirmed, except as to his holding that Mrs. Ruth L. Tharp is not entitled to a half interest in the Jim Tharp Liquor Store located at 3029 Jackson Avenue, Memphis, Tennessee, which portion of the decree is hereby reversed. This cause will be remanded to the Chancery Court of Shelby County, Tennessee, where Mrs. Ruth Liddell Tharp will be required to elect whether she will take under the provisions of the will, or take a one-half interest in the Jim Tharp Liquor Store located at 3029 Jackson Avenue, Memphis, Tennessee, plus her right to dissent from the will and take the share of the estate of James H. Tharp, deceased, to which the laws of Tennessee entitle her as his widow.

The costs of this cause may be paid by the administrator cum testamento annexo, as an expense of administration of the estate.

Avery, P. J. (W. S.), and Carney, J., concur.