[No. 1538-1.   Division One.   July 30, 1973.]

THE STATE OF WASHINGTON, on the Relation of Richard D. Lyon et al., Appellant, v. SNOHOMISH COUNTY BOARD OF ADJUSTMENT et al., Respondents.

*Westmoreland, French & Meagher* and *Joseph Meagher,* for appellant.

*Robert E. Schillberg, Prosecuting Attorney, Darrell Syferd, Deputy, Bell, Ingram, Johnson & Level,* and *Edward E. Level,* for respondents.

WILLIAMS, J.—This action involves an order of a Board of Adjustment granting a conditional use permit to establish an alcoholic recovery-rehabilitation-intermediate care center. The relators, who are nearby residents and property owners, appeal from the superior court judgment affirming the order. The precise question is whether the trial court correctly affirmed the board's finding that such a center was a facility within the purview of the county ordinance authorizing the issuance of conditional use permits in a "rural use zone" for "hospitals, sanitariums, rest homes and institutions which provide care for those incapable of independent living."

The relators had the burden of proving that the board's decision was arbitrary and capricious or ultra vires.

*State ex rel. Randall v. Snohomish County,* 79 Wn.2d 619, 488 P.2d 511 (1971); *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955). We believe the relators have not met this burden. The record before the board supports the conclusion that the proposed center meets the definition in the zoning code of "hospital" (Snohomish County Code 18.08.340) and of "sanitarium and/or rest home" (Snohomish County Code 18.08.540). The testimony also supports a finding that those being cared for in the proposed center would be "incapable of independent living."

The evidence portrays the proposed alcoholic recovery-rehabilitation-intermediate care center as one designed to meet the provisions of the Uniform Alcoholism and Intoxification Treatment Act, which was passed in 1972, and becomes effective January 1, 1974. The proposed facility is to be a single story structure of 21,000 square feet floor area, containing facilities for approximately 66 beds. It would be located on a 3½ acre site overlooking the Snohomish River Valley.

A patient admitted to the center would undergo four phases of treatment: (1) The first phase would be observation and detoxification. Here the patient would receive intensive treatment and diagnosis by physicians to prevent delirium tremens, convulsions and alcoholic hallucination, and to alleviate malnutrition and gastritis. An average stay would be 3 days. (2) The patient would next go into an intensive care phase, which would last from 3 to 5 days, in which he physically and emotionally would recover under the guidance of physicians and counselors. (3) After intensive care the patient would be ready for the third phase of treatment, the rehabilitation program, which would take a minimum of 3 weeks. This program would consist of intensive group therapy, individual counseling, lectures, and the formation of a personal rehabilitation program. (4) The last phase would be out-patient therapy, which would go on for a year or more with regular weekly group therapy sessions at the center.

Generally, patients would be committed to the facility by order of either a court or physician and once committed, would be supervised 24 hours a day. They could not use their cars and would be restricted to the premises for approximately 21 days.

■ A person to be treated, that is, an alcoholic, is a person

who habitually lacks self-control as to the use of alcoholic beverages, or uses alcoholic beverages to the extent that his health is substantially impaired or endangered or his social or economic function is substantially disrupted;

RCW 70.96A.020(1) (effective January 1, 1975). "Alcoholism" has been defined as a chronic illness that manifests itself as a disorder of behavior. *Driver v. Hinnant,* 356 F.2d 761 (4th Cir. 1966). In *State v. Freiberg,* 35 Wis. 2d 480, 151 N.W.2d 1 (1967), alcoholism was defined as the pathological effect (as distinguished from the physiological effect) of excessive indulgence in intoxicating liquors; and while being frequently under the influence of alcohol may be descriptive of one of the usual symptoms, it is not an accepted medical definition of alcoholism. In *Pierce v. Tharp,* 58 Tenn. App. 362, 430 S.W.2d 787 (1967) alcoholism was described as a diseased condition of the system, brought about by excessive use of alcoholic liquors, or morbid effects of excessive use of alcoholic beverages. *See also Seattle v. Hill,* 72 Wn.2d 786, 435 P.2d 692 (1967).

Upon this record, there is evidence upon which the board could reasonably determine that alcoholics are persons who are incapable of independent living, and that the medical treatment to be provided to the patients and the nursing, dietary care and other personal services to be rendered bring the center within the classification of a "hospital" or "sanitarium and/or rest home". We cannot say that the board acted arbitrarily in granting the conditional use permit. *State ex rel. Pruzan v. Redman,* 60 Wn.2d 521, 374 P.2d 1002 (1962); *In re Buffelen Lumber & Mfg. Co.,* 32 Wn.2d 205, 201 P.2d 194 (1948).

The other claimed errors are either presented for the first time on appeal and, thus, are not properly before us, or are insubstantial.

The judgment appealed from is affirmed.

SWANSON, C.J., and HOROWITZ, J., concur.