## FIRST AMERICAN NATIONAL BANK, Appellee,

v.

### John H. DeWITT, Jr., et al., Appellants.

Court of Appeals of Tennessee,
Middle Section.

Dec. 1, 1972.

Certiorari Granted by Supreme Court
Sept. 4, 1973.

Affirmed by Supreme Court June 17, 1974.

Henry Goodpasture, Robert E. Parker, Goodpasture, Carpenter, Woods & Sasser, Nashville, for appellee.

MacLin P. Davis, Jr., Waller, Lansden, Dortch & Davis, Joseph G. Cummings, Boult, Cummings, Conners & Berry, Nashville, for defendant, Protestant Orphanage Foundation, Inc.

Ward DeWitt, Jr., Trabue, Minick, Sturdivant & Harbison, Nashville, for appellants.

## OPINION

SHRIVER, Presiding Judge.

### THE CASE

Complainant, First American National Bank, Trustee under the Will of Dr. Paul DeWitt, deceased, filed a declaratory judgment action seeking instructions as to whether a certain portion of the residue of Dr. DeWitt's estate should be distributed to the Protestant Orphanage Foundation, Inc., or to certain relatives of Dr. DeWitt who are made individual defendants in this suit.

The case was tried before Chancellor Ned Lentz in Part One of the Chancery Court of Davidson County on February 7, 1972 and resulted in a final decree entered on February 29, 1972 holding that the complainant should pay to the Protestant Orphanage Foundation, Inc., one-third of the residual estate of Dr. Paul DeWitt.

From this decree the individual defendants, nieces and nephews of Dr. Paul DeWitt, have appealed and have assigned error.

### THE PLEADINGS

The original bill avers that complainant is the duly qualified and acting Trustee under the Last Will and Testament of Dr. Paul DeWitt, who died in Davidson County, Tennessee on November 6, 1952. The individual defendants are the only surviving nieces and nephews of decedent, except Paul DeWitt Settle and Harriett Settle Hines, the only children of a deceased niece of the decedent who left no surviving issue, but left a widow, Jennie Peebles DeWitt, who died on May 12, 1971.

Decedent left a Will dated October 10th, 1952, which was duly probated in Davidson County. A copy of the Will, which is made Exhibit 1 to the bill, provides in pertinent part as follows:

"After all the foregoing items shall have been provided for, the remainder of

the funds, or temporary trust, shall be divided into three equal amounts and shall be divided as follows:

(1) One of said equal amounts is to be paid to the Endowment Fund of the Old Woman's Home of Nashville, Tennessee;

(2) One of said funds is to be paid to the Salvation Army of Nashville, Tennessee and to be used by them for the care of old men;

(3) And the other part of this fund is to be paid to the Trustees of the Protestant Orphanage of Nashville, Tennessee.

If for any reason either of the foregoing organizations cease to exist, then the share that lapses would revert to and be inherited by my nieces and nephews equally, or their issue, if any one or more of them should be dead at the time."

The bill recites that the complainant Trustee, from its investigation, is inclined to the view that the defendant, Protestant Orphanage Foundation, Inc., is a proper recipient of the residue of the estate bequeathed to the Trustees of the Protestant Orphanage of Nashville, Tennessee. However, as fiduciary, it asks the Court to determine the intent of the Will in this regard and direct it in the distribution of said residue.

The answer of the defendant, Protestant Orphanage Foundation, Inc., among other things, avers that the Nashville Protestant Orphan Asylum was granted a Charter of Incorporation by the Tennessee Legislature on January 8th, 1846, pertinent provisions thereof in words and figures being as follows:

## "CHAPTER 52

### (Passed January 8, 1846)

*Section 1:* Be it enacted by the General Assembly of the State of Tennessee, that the institution for the benefit and education of destitute female orphans, now in existence in the City of Nashville be and it is hereby incorporated under the name of the Nashville Protestant Orphan Asylum, and have perpetual succession, that it be invested with the right to sue and be subjected to suit, to plead and be impleaded, to make all by-laws necessary for the government of the institution, to take and hold real estate necessary for the erection of suitable buildings, and to take personal estate by gift or otherwise and to do all other acts within the scope of the benevolent objects of said institution.

*Section 2:* That the institution be under the control and direction of twelve trustees, seven of whom shall be sufficient for the transaction of business and in case of a vacancy by death, removal, or otherwise, the vacancy may be filled by the other trustees; and the present board of trustees shall consist of [name of trustees], who, or a majority of whom, may elect a presiding officer, and all other officers, teachers and servants.

*Section 3:* That the destitute female children who shall be in said institution, shall be under the guardianship of said board of trustees, who shall have a right to the custody and care of the persons of said children, and exercise all the rights, perform all the duties of guardians and bring all suits for wrongs done them, and recover the custody of their persons in the name of said institution."

It is further averred that the Charter was amended on two occasions by the Legislature, the first time in 1885, by provisions which are now codified in Sections 14–1201 through 14–1206 and Sections 14–1210 to 14–1212, T.C.A. The second time the Charter was amended was in 1891 by enactment now included in Sections 14–1207 through 14–1209, T.C.A.

The answer recites that the Protestant Orphanage began its work in the basement of the old First Presbyterian Church in Nashville, and later purchased land on

Bradford Avenue where it continued the operation of an orphanage for girls, ages eight through thirteen, until June, 1957, when the home was closed due to a substantial decrease in the number of girls admitted and to the great expense of operating the home which, at that time, needed extensive repairs.

It is averred that from the closing of the home in 1957 until 1962 the Trustees of the Protestant Orphanage made extensive and exhaustive studies as to the unmet needs of children in Nashville, and that during this period funds were used for the scholarships of needy persons, particularly some of those orphans who had formerly lived in the home, and scholarships were provided for needy children in the Day Care Center of Mentally Retarded Children in Nashville; that on February 10, 1958, the Charter of the Nashville Protestant Orphan Asylum was amended in two respects, first, to change the name to "Protestant Orphanage Foundation, Inc", and second, to amend the powers of the corporation to provide: "The corporation is authorized to distribute or spend its income for the assistance of worthy needy boys and girls."

In 1962, the Protestant Orphanage Foundation, Inc. began to contribute to the budget of the Day Care Center for Retarded Children and its Trustees were elected to the Board of the Day Care Center. In 1963, it assumed full responsibility for the operation of the Day Care Center for Retarded Children, and in 1965, purchased the property on Fairmont Drive on which the school was operating.

It is averred that it has been in continuous existence since 1846, having never ceased to exist as an active organization, and that said residuary bequest of Dr. Paul DeWitt has vested in it and that it is entitled to the bequest under the terms and provisions of his said Will.

It is averred that the only condition in Dr. DeWitt's Will under which this bequest would lapse was in the event the organization ceased to exist, and that neither the Protestant Orphanage Foundation, Inc., nor its predecessor, Protestant Orphan Asylum, has ever ceased to exist since the Charter was granted in 1846.

The answer of the defendant, John H. DeWitt, Jr., and the other defendants, nieces and nephews, or grand-nieces and nephews, of Dr. Paul DeWitt, deceased, sets out their relationship to the testator which is not questioned in this record. The allegations with respect to the organization of and the granting of a Charter to the Protestant Orphanage of Nashville and the facts with respect to the amendment to that Charter are not denied.

It is averred that the testator's intent at the time he executed his Will on October 10, 1952 and thereafter until the date of his death, was to make provision for the care and maintenance of young destitute orphans in Nashville through the Nashville Protestant Orphan Asylum as it had been doing throughout Dr. DeWitt's lifetime, and that this intention was the dominant and primary reason for his making the provision in his Will for the benefit of the Protestant Orphanage of Nashville; that, from the Will itself, it is apparent that it was not his intention to make provision for the operation of other types of charities than that of caring for young destitute orphans in Nashville. As expressed in the Will, if for any reason the Protestant Orphanage ceased to exist, the share of his property left in his Will to such organization should pass to his nieces and nephews or their issue living at the time of his widow's death. It is further averred that, in reality, the Protestant Orphanage Foundantion, Inc. is not a charitable organization engaged in maintaining and caring for destitute orphans to which Dr. DeWitt intended to leave the property under his Will.

The Chancellor, after hearing the cause on the pleadings, the evidence by deposition, the testimony of witnesses heard in open court, together with arguments and briefs of counsel, decreed:

"... the Court is of the opinion that the defendant, Protestant Orphan-

age Foundation, Inc., is a proper recipient of one-third of the residual estate of Paul DeWitt, deceased, and it is, accordingly, so ordered, adjudged and decreed."

The defendants, nieces and nephews of Dr. Paul DeWitt, duly perfected an appeal and have assigned error.

In the Brief and Argument of Appellants, it is stated:

"The sole question is whether or not the institution or organization known generally as the Protestant Orphanage (of Nashville) had ceased to exist on May 12, 1971—the date of death of Dr. DeWitt's widow. If it had, then the fund in dispute goes—by the terms of Dr. DeWitt's Will—to the appellants. On the other hand, if on said date it had not ceased to exist, the fund goes to Protestant Orphanage Foundation, Inc."

In the Reply Brief of the Trustee a similar statement is made as to the question to be decided.

## ASSIGNMENT OF ERROR

There is a single assignment of error, as follows:

"The Court erred in finding that Protestant Orphanage Foundation, Inc. is the proper recipient of one-third of the residual estate of Dr. Paul DeWitt, deceased, and in ordering that the Trustee pay to Protestant Orphanage Foundation, Inc., one-third of the residual estate of Dr. Paul DeWitt, deceased."

## THE ISSUES

For the appellants it is argued that the institution known as the Protestant Orphanage ceased to exist in 1957, as is disclosed by the deposition of Mrs. Lipscomb Davis, a member of the Board of the defendant corporation. It is shown that, since 1964 all of the funds of the Protestant Orphanage Foundation, Inc. have gone into the operation of the Day Care center which is a separate corporation giving out-patient service to retarded children in the community. It is argued that the Protestant Orphanage Foundation, Inc. is simply a corporate entity used as a conduit for the channeling of funds to the Day Care Center for Retarded Children.

Counsel for the appellants assert the following two propositions of law:

"I. A gift to the trustees of an institution is in law and in fact a gift to the institution itself. 14 C.J.S. Charities § 11, p. 425.

II. A gift to a charitable corporation by name, without further restriction or limitation as to use, will be deemed to be made for the objects and purposes for which the corporation was organized. 14 C.J.S. Charities §§ 5 and 17; In re Harrington's Estate, 151 Neb. 81, 36 N.W.2d 577 (1949)."

It is then argued that the facts in the case In re Harrington's Estate, 151 Neb. 81, 36 N.W.2d 577, are more nearly like those in the instant case than any other that counsel was able to find and that it is authority for appellants' position.

In the Harrington case, the testator and his wife made a joint will giving all of their property to the survivor, and upon the death of such survivor and the payment of certain items, a portion of the residue was to be distributed, "Two-Fifteenths thereof to the Board of National Missions of the Presbyterian Church, U.S.A.", and "One-Fifteenth thereof to the Presbyterian Theological Seminary at Omaha, Nebraska, *if in existence; but if not in existence at the death of the survivor of said testators,* then to said Board of National Missions of the Presbyterian Church, U.S.A."

It was shown that at the death of the wife, who survived her husband, the Seminary had closed its doors, discharged its faculty members, discontinued the objects and purposes for which it was incorporated and ceased to function as a teaching institution, although it retained its corporate existence and its assets. Its income, by

direction of the general assembly, was turned over to the McCormick Theological Seminary in Chicago. Thereupon, the Board of Missions claimed the legacy on the ground that the Seminary had ceased to exist, and the Supreme Court of Nebraska upheld its claim, stating, among other things:

"The meat of the matter here is not whether plaintiff was a legal corporate entity at the death of testatrix, but whether or not it was then existing as a seminary, thus carrying out the objects and purposes for which the gift was given. As stated in In re Walter's Estate, 150 Misc. 512, 269 N.Y.S., 400, 401: 'The corporation discontinued the conduct and operation of its hospital and clinic and has entirely ceased to function. It is not necessary that the corporation be judicially dissolved to make the gift ineffectual. It is sufficient if the charitable purposes for which it was formed cannot be carried out. Matter of Mills' Will, 121 Misc. 147, 200 N.Y.S., 701. Furthermore, the charitable intentions of the testatrix in making the bequest can no longer be effectuated.' See also In re Walter's Estate, 150 Misc. 512, 269 N.Y.S. 400, 402.

We conclude that testatrix never intended to give her estate to a mere named non-functioning corporation which at her death, had admittedly ceased to and was unable to function and carry out the objects and purposes for which it had been incorporated and for which her bequest was given, whose charitable trust property and funds were under the jurisdiction and control of the state or court with judicial power already exercised, as plaintiff concedes, to divert its property, including the gift here involved, to another seminary in another city and state. To hold otherwise would alter and make ineffectual the objects and purposes of her gift."

In the Harrington case, it was held that a bequest to a charitable corporation by name, without further restriction or limitation as to use, is in fact not a bequest to the corporation as such, but to the objects and purposes for which such corporation was organized. And, further, that the intent of the donor in a bequest to a charitable corporation must be gathered from the four-corners of the will, but the objects and purposes for which such a donee was incorporated may be considered in determining the construction and legal effect of such bequest. And, finally, that if the donee had ceased to carry out the objects and purposes for which it was incorporated, although still legally existent as a corporation, would not qualify it to accept or receive the bequest.

Another case cited by counsel for appellants is Camden Trust Co. v. Christ's Home of Warminster, 28 N.J.Super. 466, 101 A.2d, 84 (1953), in which case the Harrington case, supra was cited and followed.

Another case relied on by appellants is Curators of University of Missouri v. University of Kansas City, 442 S.W.2d 66, in which the Supreme Court of Missouri held that when the State supported University of Missouri took over the operation of the University of Kansas City, which was a privately endowed school, the latter University ceased to exist within the meaning of a will creating a trust fund for loans to students attending the University of Kansas City.

On the other hand, it is argued on behalf of the Trustee that, where there is no ambiguity there is no warrant for construction of a will, citing Moore v. Moore, 204 Tenn. 108, 315 S.W.2d 526. And it is further argued that the well known rule to be followed is that the intention of the testator is to be ascertained, if possible, and that the language of the will itself controls and should be given effect. It is also pointed out that in Ratto v. Nashville Trust Co., 178 Tenn. 457, 159 S.W.2d 88, it was announced that the Courts of Tennessee would look only to Tennessee law in arriving at the construction to be placed on charitable trusts. Also, as was said in

Pierce v. Tharp, 58 Tenn.App. 362, 430 S. W.2d 787, trusts for charitable uses are highly favored by the Courts and will be upheld even though the parties to be benefited may not be defined with the precision which would be required in trusts of an ordinary and private description.

Counsel quote the following as authority:

"In the few cases discovered in which the question arose as to whether the existence of an institution named as beneficiary should be deemed to have ended, within the contemplation of a will providing that the trust should come to an end when or if the institution ceased to exist, the Courts have recognized that the intent of the testator should govern; and it is noticeable that actually in none of these cases was it found that the institution had come to an end, so as to result in its losing the benefits of the trust." 152 A.L.R. 1303, and numerous cases cited therein; see, for example, Drake v. Chappel, 288 Ky. 610, 157 S. W.2d 117 (1941).

In the Reply Brief of the Protestant Orphanage Foundation, Inc., it is argued that, from the proof it is shown that the Trustees of the Protestant Orphan Asylum, later known as Protestant Orphanage Foundation, Inc., have never ceased meeting since 1846; that the same Board meets monthly and they have the same by-laws; and the officers and trustees are selected in the same manner. It is also pointed out that in 1947 there were some 200 to 250 members of the Protestant Orphan Asylum, with nine trustees, plus five officers, and that the decedent's widow, Mrs. Paul DeWitt, was a member from 1963 until her death in 1971, and in her will she left money to the corporate defendant.

From 1947 through 1957, the corporate defendant gave institutional care to girls, not necessarily orphans, at its home on Bradford Avenue and the Trustees have continued to hold regular monthly meetings and the members have held regular annual meetings throughout the period.

Counsel quote from Breeding v. Williams, 9 Tenn.App. 335 (339–340), as follows:

"Quoting from Milligan v. Greenville College, supra:

" 'In Johnson v. Johnson, it was said:

" ' "There is a broad distinction between a gift direct to a charity or charitable institution already established, and a gift to a trustee to be by him applied to a charity. In the first case, the court has only to give the fund to the charitable institution, which is merely a ministerial or prerogative act; but *in the latter case the court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust or apply the funds in bad faith to purposes foreign to the charity.* 2 Perry on Trusts, Section 719." . . .

" 'It was insisted in Carson v. Carson, 115 Tenn. 37, 88 S.W. 175, that a provision of the will was too indefinite to be sustained. Answering this objection the court said:

" ' "The devise and bequest being made direct to a corporation which is charitable, the trusts need not be set out so specifically and definitely as if made to individuals, in order to make them valid.' "

It is again emphasized, as was held in Pierce v. Tharp, 58 Tenn.App. 362, 430 S. W.2d 787, that trusts for charitable uses are highly favored by the Courts of equity and will be upheld, although the parties to be benefited may not be defined with the precision which would be requisite in trusts of an ordinary and private description.

And, finally, this quotation from 57 Am. Jur., Wills, Section 160:

"*160. Effect of Discontinuance of Functions, Mergers, etc.*—The relatively few cases on the point agree, for the most part, that the fact that a religious, charitable, or educational organization named as a beneficiary in a will discon-

tinues its active functions after the execution of the will does not impair its right to take the gift so long as its identity, whether corporate or associative, continues without dissolution until the death of the testator. A bequest to the diocese of a church is not defeated by the detachment of a portion of the territory of the diocese and the incorporation thereof in a new diocese. The merger of a charitable or religious corporation with another of the same kind or denomination, or the transfer of the assets of such a corporation to a newly formed corporation, is not ncessarily to be considered the termination of the institution so as to render unavailing a devise in its favor, at least not where there is no change in the corporate purpose or where the manifest intent of the testator is to the contrary."

## THE FACTS

The facts in this case are not in dispute. Mrs. Lipscomb Davis, the only witness to testify on behalf of the defendant, Protestant Orphanage Foundation, Inc., stated that she had been connected with that organization since about 1947, at which time she was a member, and in about 1950 she became a member of its Board. She stated that when she first became affiliated with the organization, its chief function was to care for homeless, indigent, needy girls in Nashville. However, she stated:

"Well, they were not pure orphans, in every case. They oftentimes had one or both parents living but for a variety of reasons the home situation was such that they could not live at home. There were pure orphans in the group but they were not limited to that."

It is to be noted that this was the situation when Dr. DeWitt made his bequest to the institution.

She stated that in about 1957, for a number of reasons, including the changing of child care in this community, the trend towards the use of foster homes for children rather than orphanages, the fact that their building was old and they were faced with either building a new one or repairing the old one, the Board decided to abandon that building, but they felt that they had a commitment to the people who had been interested in this service and who had given money to it and who had worked with it, to continue to contribute to the welfare of needy children in the community. She refers to the fact that, in April of 1958, they amended the Charter so as to broaden the scope of activities and the powers of the organization and, among other things, it was decided to contribute to the Day Care Center for Retarded Children, and, in 1963, they assumed full control or responsibility for the Day Care Center for Retarded Children and have operated in that capacity since that time.

On cross-examination she reiterated that the first paragraph of their Charter was changed and the name was changed from the Nashville Protestant Orphanage to the Protestant Orphanage Foundation, Inc., and the corporate powers were broadened, so that: "The Corporation is authorized to distribute or spend its income for the assistance of worthy needy boys and girls."

It was pointed out that the Day Care Center is presently taking care of some forty retarded children and the corporate defendant continues to carry out its purposes of serving needy children at the present time, this being confined at the moment to retarded children, which was determined by the Board to be the area of greatest need in our community.

## OUR CONCLUSIONS

We approach the question to be determined on this appeal by remembering that, "Trusts for charitable uses are highly favored by the courts of equity and will be upheld, although the parties to be benefited may not be defined with the precision which would be requisite in trust of an ordinary and private description." Pierce v. Tharp, 58 Tenn.App. 362, 430 S.W.2d 787.

■ Again, as has been stated in many cases, in construing a will, the object of the Courts is to ascertain the intention of the testator as expressed in the instrument, and that that intention is to be gathered from the language used in the will and not from what the Court or the parties may suppose that the testator intended. Pritchard, Law of Wills, Third Ed., Sec. 384, p. 352, and numerous cases cited therein.

We agree with the statement in the Reply Brief of the Trustee that: "The sole question is whether the organization referred to by Dr. DeWitt as the 'Trustees of the Protestant Orphanage of Nashville, Tennessee' has ceased to exist. If not, the corporate defendant is the proper recipient. If so, the individual defendants are the proper recipients."

Counsel for the defendants, nieces and nephews of Dr. Paul DeWitt, deceased, rely heavily on the case In re Harrington's Estate, 151 Neb. 81, 36 N.W.2d 577, and we are impressed with the reasoning of the Court in that case and with its conclusions as they apply to the case at bar. However, we think there are some features of said case that distinguish it from the case at bar.

Among other things, the Court said:

"We conclude that testatrix never intended to give her estate to a mere named non-functioning corporation which, at her death, had admittedly ceased to and was unable to function and carry out the objects and purposes for which it had been incorporated and for which her bequest was given, *whose charitable trust property and funds were under the jurisdiction and control of the state or a court with judicial power already exercised, as plaintiff concedes, to divert its property, including the gift here involved, to another seminary in another city and state."*

Again, we must remember, as was stated in Ratto v. Nashville Trust Co., 178 Tenn. 457, 460, 159 S.W.2d 88, 89:

"It has been announced that the Courts of Tennessee will look only to Tennessee law in arriving at the construction to be placed on charitable trusts." Phillips' Pritchard Law of Wills, Third Ed., Sec. 182, p. 180.

which we construe to mean that decisions in foreign jurisdictions on this subject are, at most, only enlightening or persuasive in Tennessee.

We are also impressed by the holding in Breeding v. Williams, 9 Tenn.App. 335, where the Court quotes from an older case of Milligan v. Greenville College, that there is a broad distinction between a gift direct to a charity, or charitable institution already established, and a gift to a trustee to be by him applied to a charity. In the first instance, the Court has only to give the funds to a charitable institution, which is merely a ministerial act, but in the latter case the Court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust or apply the funds in bad faith to purposes foreign to the charity.

The language of Dr. DeWitt's Will is: ". . . to the Trustees of the Protestant Orphanage of Nashville, Tennessee." There is no restriction as to the application of the fund and no direction as to its use. Evidently Dr. DeWitt was willing to trust the discretion of the "Trustees" in the use of the fund as long as their organization continued "to exist".

■ When we consider that the defendant, Protestant Orphanage Foundation, Inc., is really a continuation of the Protestant Orphanage of Nashville, Tennessee, named in the Will of Dr. Paul DeWitt, and to whose Trustees he made the bequest in question, and that the Board of Trustees of the Protestant Orphanage of Nashville, which is referred to and whose correct name is Nashville Protestant Orphan Asylum, Inc., has continued to operate without

interruption since its founding in 1948 and that the general charitable purposes for which the corporation was organized have been carried out through the years, we feel that we must agree with the Chancellor in his conclusion that the organization referred to in Dr. DeWitt's Will has not ceased to exist and that, therefore, his conclusion that the bequest should be paid to this organization rather than to the nieces and the nephews of Dr. DeWitt must be affirmed.

It must be remembered that the defendant, Protestant Orphanage Foundation, Inc., is authorized under its Charter to continue exactly the same service to needy children in this community as it was when it was designated as a Protestant Orphanage of Nashville, Tennessee in the Will of Dr. DeWitt. If, upon receiving this bequest, it be conceived by proper interested parties that the fund is being, or is about to be diverted, by the Trustees of the defendant to a use not authorized under Dr. DeWitt's Will, the Courts have the power and jurisdiction, as was stated in Breeding v. Williams, supra, to see that they do not apply the funds to purposes foreign to the charity.

For the reasons hereinabove recited, we overrule the assignment of error and affirm the decree of the Chancellor.

Affirmed.

PURYEAR, J., concurs.

TODD, J., concurs with opinion.

TODD, Judge (concurring).

The will of the deceased is explicit as to the three classes of persons to benefit from the residuary clause thereof. Said classes are:

(1) Old Women
(2) Old Men
(3) Orphan Children

In Item (2) of the residuary clause, the will specifically limits the Salvation Army in the use of funds bequeathed to it; i.e., "for the care of old men."

Item (3) of the residuary clause gives equal indication that the funds bequeathed thereunder are to benefit an orphanage; i.e., a home for homeless children.

Such was the function of the Protestant Orphanage Foundation, Inc., on the date of the will and on the date of the death of the testator.

To the extent (and only to the extent) that the Protestant Orphanage Foundation, Inc., acts as trustee (or trustees) for an institution for homeless children, said Foundation is the intended beneficiary of the bequest.

To the extent that the Protestant Orphanage Foundation, Inc., is pursuing and supporting other charitable activities, it is *not* the "Trustees of the Protestant Orphanage of Nashville, Tennessee," as designated in the will, regardless of its former activities or similarity of name.

The courts have no right to assume that Protestant Orphanage Foundation, Inc., will use said bequest for objects other than that intended by the testator any more than the courts would be justified in assuming that the Salvation Army would use its bequest for purposes other than to assist old men.

However, according to this record, the Protestant Orphanage Foundation, Inc., is not presently engaged in providing refuge for homeless children, and this separate concurring opinion is filed to emphasize the final, major paragraph of the principal opinion with which I concur under the foregoing considerations.